2006 VT 23

# In re Appeal of Lorin Duckman

[898 A.2d 734]

No. 04-483

Present: Dooley and Johnson, JJ., and Eaton, D.J., Gibson, J. (Ret.), and Martin, Supr. J. (Ret.), Specially Assigned

Opinion Filed March 10, 2006
Motion for Reargument Denied April 26, 2006

*William A. Nelson*, Middlebury, for Appellant.

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Appellee.

*John L. Pacht* of *Hoff, Curtis, Pacht, Cassidy, Frame, Somers & Katims, P.C.*, Burlington, for Amicus Curiae Vermont Association of Criminal Defense Lawyers.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Amicus Curiae Office of the Defender General.

¶ 1. **Dooley, J.** Attorney Lorin Duckman appeals a district court order finding him in summary criminal contempt and placing him in custody for forty-five minutes. On appeal, attorney makes numerous claims regarding the court's contempt order and subsequent denial of his motion to vacate. Generally, these claims can be summarized as follows: (1) attorney was justified in disobeying the court's order because the court did not have the authority to issue the order, and an exception to the collateral bar rule applies; (2) the court's contempt order was based on erroneous factual findings; (3) attorney was denied his due process guarantees of notice, a hearing, and an impartial tribunal; and (4) the sentence was beyond the court's discretion. We reject all of these claims and affirm the rulings of the district court.

¶ 2. The events forming the basis for the contempt finding occurred on August 30, 2004, when attorney was in Addison District Court representing the defendant in the criminal trial of *State v. Barrows*, Nos. 163-3-03, 602-10-03, and 240-6-04 Ancr. The parties presented the court, Judge Helen M. Toor presiding, with a written plea agreement. At the time, the plea agreement included the proposed sentence, except for the element of restitution, which the parties were still negotiating. The parties discussed restitution and the defendant's ability to pay with the court. The victim did not support the plea agreement and gave an unsworn statement to that effect.

¶ 3. Before ruling on acceptance of the plea agreement, the court turned to the defendant to conduct a Rule 11 colloquy[1] and allow the defendant a chance to speak. Attorney objected, and asked that the court rule on whether the plea agreement would be accepted before addressing his client. The court declined to change its procedure, and attorney stated that he would then be forced to withdraw his client's plea.[2]

---

[1] Before accepting a guilty plea, the court must personally address the defendant in open court and inform him of certain rights, including the consequences of a guilty plea. V.R.Cr.P. 11(c).

[2] Although the discussion in the courtroom revolved around whether or not attorney's client would withdraw his plea, the real issue was whether the client would withdraw from the agreement, as no plea had yet been taken. The court began by addressing the client:

> THE COURT: All right, Mr. Barrows, I'm going to go over this with you and then I'm going to hear whatever you have to say and I'm going to make a decision at that point about whether I'm going to accept this proposal or not. All right?
> MR. DUCKMAN: Judge, I would prefer that you make the decision before he makes any admissions.
> THE COURT: Well, I'm not going to because I want to hear what he has to say to me in his allocution.
> MR. DUCKMAN: But then we don't have a . . .
> THE COURT: That's my view.
> MR. DUCKMAN: But then we don't have an agreement.
> THE COURT: That's correct and that's the way it works.
> MR. DUCKMAN: Okay, well, then we're not going to go forward.
> THE COURT: Then you can withdraw the plea. Anything he said is no longer
> . . .
> MR. DUCKMAN: No, I don't agree with that. I think that if you have an agreed-upon sentence.
> THE COURT: Mr. Duckman, that's how it always works.
> MR. DUCKMAN: But I, but I . . .

¶ 4. The court explained that attorney had no independent authority to withdraw his client's plea and must first consult with his client. Attorney refused to adjourn and consult with his client and claimed that the court was interfering with his attorney-client relationship. The court ordered attorney to leave and speak with his client. When attorney refused, the court found him in contempt for expressly refusing to comply with the court's order and directed a court officer to place him in a holding cell until 1:00 p.m., which was approximately 45 minutes later.[3]

---

THE COURT: I take the plea, I hear what everybody has to say, I decide. One of the things I take into account is what your client has to say about his responsibility, that's one of the issues that a judge always takes into account.

[3] The exchange proceeded as follows:

THE COURT: Well, Mr. Duckman, hold on. I think you need to consult with your client. I don't think you have the right to now withdraw his plea without consulting with him. And I'm sure . . .

MR. DUCKMAN: I think you're interfering with my relationship with him right now, Judge. I'm withdrawing . . .

THE COURT: Well, I'm going to ask you — stop.

MR. DUCKMAN: Okay.

THE COURT: Or I will hold you in contempt of court.

MR. DUCKMAN: I haven't done anything contemptuous.

THE COURT: Stop. Stop. I don't think it's an appropriate thing for a lawyer to withdraw a client's plea without discussing it with the client, the pros and cons, the costs and benefits. You did this once before, I didn't say anything about it. I do not think it's appropriate. I think you need to consult with your client about the risks of going to trial if he does that. If after you've spoken with him, he comes in and tells me he wishes to not go forward, I will accept that, but I need to hear it from him, okay?

MR. DUCKMAN: I think, Judge, what you're doing is interfering with my relationship with my client.

THE COURT: You can . . .

MR. DUCKMAN: I would ask for, I would ask for a continuance right now so I can prepare appropriate papers and perhaps I will come back and ask for a change of venue. But I don't think that I am prepared to proceed.

THE COURT: Well, I'm not accepting that request. So why don't you go out . . .

MR. DUCKMAN: Well, I'd ask for a continuance.

THE COURT: No.

MR. DUCKMAN: And I think it's inappropriate.

THE COURT: Go speak with your client.

MR. DUCKMAN: I think it's inappropriate to threaten me with contempt.

THE COURT: Stop. Mr. Duckman, I've told you what to do. Go speak with your client. I will be available in ten minutes once you've talked to him.

MR. DUCKMAN: Judge, I don't think you can tell me to go talk to my client.

¶ 5. In a written order, the court certified the contempt finding on August 31, 2004, stating that attorney's "direct refusal of the court's order, along with [his] angry, confrontational, and disrespectful manner . . . made it impossible to proceed with the case, evidenced an utterly inappropriate manner for a lawyer to use in the courtroom towards a judge, and constituted contempt of court." On September 9, 2004, attorney filed a motion to vacate the contempt order, arguing that it was invalid on several grounds. Attorney also requested an evidentiary hearing to present his own version of the facts. On October 20, 2004, the court denied attorney's request for a hearing, finding that it was unnecessary because the contemptuous conduct took place in the court's presence.

¶ 6. The ruling on the motion to vacate was extensive and addressed each of attorney's claims at length. The introduction set the stage:

> The undersigned has never in twenty-two years in the legal profession . . . seen an attorney behave in as disrespectful and angry a manner towards a judge as Attorney Duckman has on repeated occasions, both in the courtroom and in chambers. Prior to August 30, 2004, the court had attempted to address Respondent's behaviors by, for example, speaking to Respondent in chambers, asking one of his superiors to speak to him, and clearly explaining the court's expectations of him. He and his superior were also advised that if such conduct continued the court would be forced to take more serious action. On at least one prior occasion, Respondent was warned that he was on the verge of being held in contempt.

---

THE COURT: Well, I just did.
MR. DUCKMAN: But I'm not going to go do it.
THE COURT: In that case, you are in contempt of court, put him in there and we'll speak at one o'clock, under shackles.
MR. DUCKMAN: Judge, I think I'd like an opportunity to be represented by counsel.
THE COURT: Mr. Duckman, I've just found you in summary contempt by ignoring the Court's orders.
MR. DUCKMAN: It may well be an order that the Court shouldn't have given me.
THE COURT: Excuse me. If you continue talking when I am speaking, I will hold you overnight, do you understand. I am holding you until one o'clock. I find that you are in contempt by ignoring my orders. We will see you at one.

On August 30, not only did Respondent display the same rude and disrespectful behavior that he had displayed on previous occasions — repeatedly interrupting the judge — but he went further than he had in the past. On this occasion, he willfully refused to comply with a direct order of the court intended to protect his client's right to determine whether to proceed with a guilty plea pursuant to a proffered plea agreement, or whether to withdraw from that agreement. Moreover, Respondent's refusal forced the courtroom proceedings to come to a halt. Because of this direct refusal to comply with the court's order, as well as the disrespectful way in which it was done and its interference with the ongoing proceeding, the court concluded that it had no choice but to take immediate action. Such action was needed to punish the behavior, to deter similar future behavior by Respondent, and to make clear to others that such behavior would not be tolerated. Because Attorney Duckman's actions demonstrated that repeated prior attempts to remedy his behavior had been unsuccessful, the court also concluded that a severe sanction was necessary. For all of these reasons, the court imposed the sanction of a brief incarceration until after the lunch hour.

The introduction was followed by a section entitled "Past Inappropriate Conduct," which provided "a brief summary of some of the prior instances of unprofessional conduct." The court explained the influence of these prior acts:

These incidents were not the basis for the contempt finding, but they contributed to the court's decision that there was no less severe action that would adequately address the situation. They also contributed to the court's decision to impose the sanction it chose, rather than a monetary sanction.

The court then went on to describe the events that led up to the contempt finding. The court reiterated the reasons stated in the August order: "The court's finding of contempt was based upon the willful refusal of counsel to comply with a clear order of the court, as well as the 'angry, confrontational, and disrespectful manner' in which he did so." The court analyzed the grounds necessary for an adjudication of contempt and held that they were present. The court concluded:

As noted above, the court had been faced over a period of months with repeated challenges to its authority, displays of anger, and other unprofessional conduct by Attorney Duckman. . . . [C]ounsel was well aware of the court's expectations, and kinder and gentler efforts to modify his behavior had been unsuccessful.

If the conduct on August 30 had been the first incident of oppositional and disrespectful behavior by Attorney Duckman, the court likely would not have taken the action it did. Generally, the court seeks to speak at the bench or in chambers with attorneys about any issues with their courtroom behavior. With another attorney, that would have been the likely course of action. Here, however, the prior history with Attorney Duckman had made it clear that lesser steps would be ineffective. Given the interruption of the proceedings, the willful and disrespectful nature of the conduct, and the court's past experience with the attorney in question, it was apparent that a severe sanction was necessary to convey the message that such behavior was unacceptable.

¶ 7. Under our procedural rules:

A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

V.R.Cr.P. 42(a). Although this rule provides the procedure for adjudicating a criminal contempt, common law dictates the substantive elements of summary contempt. *State v. Allen*, 145 Vt. 593, 600, 496 A.2d 168, 172 (1985). Summary contempt is "an act 'committed directly against the authority of the court, tending to impede or interrupt its proceedings or lessen its dignity.'" *Id.* (quoting *In re Morse*, 98 Vt. 85, 90, 126 A. 550, 551 (1924)) (emphasis omitted). Trial courts have discretion to issue contempt orders, and reversal of a contempt judgment is appropriate only if "the trial court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." *Id.* We review the exercise of this discretion carefully in cases of summary contempt because in those proceedings "the otherwise inconsistent functions of prosecutor, jury and judge are united in one individual." *United States v. Flynt*, 756 F.2d 1352, 1363 (9th Cir. 1985).

Therefore, we view the decision to use summary contempt power "as an extraordinary exercise to be undertaken only after careful consideration and with good reason." *Id.* We are also mindful that the power of summary contempt is necessary to "preserve order and decorum" in the courtroom. *Sacher v. United States*, 343 U.S. 1, 21 (1952).

## I.

¶ 8. We first address attorney's claim that the court had no authority to order him to speak with his client, so he was justified in disobeying its order. Attorney attacks the validity of the ruling on several grounds, including that: (1) the court's plea process did not comply with the requirements of Vermont Rules of Criminal Procedure 11 and 32; (2) requiring his client to speak before acceptance of the plea agreement would violate his client's right against self-incrimination; (3) if his client spoke he could be subject to prosecution for perjury later; and (4) his client would risk a harsher sentence if he spoke before acceptance of the agreement. The State maintains that the court complied with the requirements of Rules 11 and 32, and additionally submits that the collateral bar rule precludes challenging the validity of the court's order by engaging in contemptuous conduct. We do not reach attorney's substantive arguments because we conclude that the collateral bar rule prevents attorney from challenging the validity of the court's order as a defense to the judgment of contempt.

¶ 9. We reemphasize at the outset the grounds for finding attorney in contempt. He was not found in contempt for refusing to go along with the court's plea consideration procedure. Obviously, his opposition to the procedure was the context that led to the contempt judgment; it was not, however, the reason for that judgment. Instead, he was found in contempt for refusing to discuss the withdrawal of the plea agreement with his client, along with his angry, confrontational, and disrespectful manner. The narrow reason for the contempt finding answers many of the objections made by attorney in this part of his argument.

¶ 10. The collateral bar rule provides that individuals cannot challenge the validity of a court order by violating the order. See *State v. Crown*, 169 Vt. 547, 549, 726 A.2d 493, 495 (1999) (mem.) ("We do not generally allow a person who is under a court order to challenge it by violating it."); *State v. Austin*, 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996) (articulating rule and holding that probationer

may not challenge validity of probation condition at revocation proceeding); *Allen v. Iowa Dist. Court*, 582 N.W.2d 506, 508-09 (Iowa 1998) (explaining that court orders must be obeyed, even if erroneous). Generally, attorneys must comply with a court's ruling regardless of whether the ruling has legal support. See *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."). Thus, an attorney cannot generally defend against a contempt finding for violating an order by arguing that the underlying order was unlawful. See *Nakell v. Att'y Gen. of N.C.*, 15 F.3d 319, 324 (4th Cir. 1994) (dismissing attorney's claim that his disobedience of court instruction was justified because his legal position was correct). The rationale for this rule is to protect the efficient administration of justice and to encourage litigants to follow court orders. *In re Hern Iron Works, Inc.*, 881 F.2d 722, 726 (9th Cir. 1989). If an attorney feels that the court's order is illegal or incorrect, the attorney's obligation is to object and preserve the point of error for appeal. *Maness*, 419 U.S. at 459.

¶ 11. The rule is not without exception. "Courts have declined to apply the collateral bar rule when there was not an adequate and effective remedy to review the challenged ruling, or where compliance could cause irreparable injury which may not be repaired by appellate vindication." *Allen*, 582 N.W.2d at 509 (citing cases).[4] Attorney urges us to find an exception to the collateral bar rule in this case, claiming that compliance with the court's order would have resulted in irreparable harm. Attorney's basic argument is that following the court's order would have jeopardized his client's Fifth Amendment rights.

¶ 12. In support of his argument, attorney cites *Maness* for the proposition that an attorney cannot be punished for violating a court order if the attorney believes in good faith that obedience might implicate his client's Fifth Amendment rights. Although we recognize

---

[4] Two additional exceptions that have been applied in some cases are not applicable in this case. "[I]f the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity." *In re Novak*, 932 F.2d 1397, 1401 (11th Cir. 1991); see *Crown*, 169 Vt. at 549-50, 726 A.2d at 496 (holding alleged defect was not jurisdictional). In addition, in some jurisdictions, orders that are transparently invalid or frivolous are excepted from the collateral bar rule. See, e.g., *United States v. Mourad*, 289 F.3d 174, 178 (1st Cir. 2002).

this general principle, we do not agree that *Maness* is controlling in this situation. In *Maness*, a lawyer was held in contempt for advising his client that he could refuse to produce allegedly obscene magazines on the ground that they might incriminate him. 419 U.S. at 451-52. At the outset, the United States Supreme Court reiterated that court orders must be obeyed, even if a person believes they are incorrect. *Id.* at 458. The Court held, however, that the attorney could not be subjected to contempt for advising his client to invoke a Fifth Amendment privilege, even if this advice caused a witness to disobey a court order, where the attorney had a good faith belief that the material may have incriminated his client. *Id.* at 465.

¶ 13. The situation on appeal differs in several respects from *Maness*. First, and most importantly, in *Maness*, there was a risk to the client's Fifth Amendment rights, and here no such risk existed. Attorney opines that "[t]he self-incrimination risk of an unprotected allocution ... is no different from the disclosures ordered in *Maness*." As we emphasized above, we disagree with attorney's characterization of the risk because the order that subjected attorney to contempt was not an order to the client to make potentially incriminating statements. The court directed attorney to discuss the implications of withdrawing from the plea agreement with the client. This order did not impact the client's constitutional protection against self-incrimination.

¶ 14. Second, the attorney in *Maness* was punished for the advice he gave his client, not for the attorney's direct disobedience in the courtroom. *Id.* at 466. There, counsel had advised his client that producing documents could incriminate him and therefore urged the client to invoke his Fifth Amendment right against self-incrimination. The Supreme Court noted that there were strong policy reasons for protecting a lawyer's ability to give honest advice to clients. *Id.* ("If performance of a lawyer's duty to advise a client that a privilege is available exposes a lawyer to the threat of contempt for giving honest advice it is hardly debatable that some advocates may lose their zeal for forthrightness and independence."). Whether clients choose to accept the attorney's advice and risk contempt charges themselves is another matter. The *Maness* Court was concerned with preserving the attorney's ability to speak candidly to his client about legal options. There was no claim that the attorney acted in direct disobedience of a court order. By contrast, attorney here was not punished for furnishing his client with faulty

advice, but for failing to comply with the court's direction to consult with his client.

¶ 15. Last, in *Maness*, there was no indication that the attorney acted in defiance of the court. In fact, the Supreme Court emphasized that the record was "devoid of evidence of contumacious conduct or any disrespect for the court." *Id.* at 469; see *Waste Conversion Inc. v. Rollins Envtl. Servs. (NJ), Inc.*, 893 F.2d 605, 611 (3d Cir. 1990) (reversing contempt and emphasizing that attorneys' "conduct was neither defiant nor disrespectful"). In contrast, here, the court found that attorney was "angry, confrontational, and disrespectful" during the proceedings.

¶ 16. Attorney also argues that other harms that could not be remedied on appeal might have resulted from complying with the court's instruction. These alleged harms include the court's rejection of the agreement, harm to the attorney-client relationship, and an imprudent response by attorney's client. At best, these harms are speculative. In any event, they do not amount to the type of irreparable harm necessary to justify disobeying the court's order to consult with the client. See *In re Hern Iron Works*, 881 F.2d at 728-29 (noting that the irreparable injury exception is applied in only limited cases, namely those implicating Fifth Amendment privileges). Therefore, we conclude that the collateral bar rule prevents attorney from attacking the validity of the court's procedure, and we decline to address attorney's arguments pertaining to the merits of the procedure.

## II.

¶ 17. Attorney next challenges whether his actions were sufficient to constitute contempt, alleging that the court's factual findings were clearly erroneous. Attorney does not dispute that he violated the court's order, and we conclude that the court's finding that attorney's demeanor was disrespectful was not erroneous.

¶ 18. The court gave attorney a direct order and, even though attorney disagreed with the order, he was still bound to follow it, as discussed above. Attorney's disobedience of a direct order was sufficient to support the contempt finding. Compare *Pounders v. Watson*, 521 U.S. 982, 989 (1997) (per curiam) (upholding state trial court's finding of summary contempt where attorney "willfully refused to comply with the court's order"), and *Nakell*, 15 F.3d at 324 (affirming contempt where a "rational trier of fact could find that Nakell willfully disobeyed a lawful order of the court"), with *United*

*States v. West*, 21 F.3d 607, 608-09 (5th Cir. 1994) (reversing trial court's contempt order because attorney did not disobey an order or obstruct the administration of justice). The point was squarely covered in *Sacher*:

> Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts. But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge — his right is only respectfully to preserve his point for appeal.

343 U.S. at 9. Furthermore, an attorney "never has the right to let his temper, his zeal, or his intention lead him into disrespectful, accusative language to the court." *MacInnis v. United States*, 191 F.2d 157, 159 (9th Cir. 1951). Thus, we look not only to the words uttered but also to "the connection in which they were used, the tone, the look, the manner, the emphasis." *In re Cooper*, 32 Vt. 253, 256 (1859).

¶ 19. Here, the court found that attorney, in a disrespectful manner, willfully violated its order to talk with the client before attempting to withdraw from the plea agreement, disrupting the proceedings and making it impossible to proceed. Although lawyers are encouraged to pursue their clients' interests zealously, as the United States Supreme Court explained, "[a]dvocacy that is 'fearless, vigorous, and effective,' does not extend to disruptive conduct in the course of trial and in knowing violation of a clear and specific direction from the trial judge." *Pounders*, 521 U.S. at 991 (quoting *Sacher*, 343 U.S. at 13).

¶ 20. In this case, attorney's tone, look, manner, and emphasis played a role in the court's determination that attorney was in contempt. *In re Cooper*, 32 Vt. at 256. Ordinarily, we would be left to determine these circumstances from the transcript alone, an almost impossible task. For this case, however, the in-court events were videotaped to create the court record, and we have been able to view the videotape of the proceedings.[5] See V.R.Cr.P. 53.1(b) (videotape is

---

[5] Although the availability of the videotape is helpful in our review, it is not the same as hearing the presentation and observing the presenters in person. Thus, the availability of the videotape does not change our standard of review. See *State v. Freeman*, 2004 VT 56,

the official record on appeal). While the tape does not fully capture the emotion of the moment, it does show that attorney was upset, as he stated, and angry. At the time the contempt order was issued, effective communication between the judge and attorney had ceased, and attorney appeared to be defiant. We find no abuse of discretion in the adjudication that attorney was in contempt.

¶ 21. Having concluded that the court's factual findings were not erroneous, we also address the arguments of amici in this case that threatening public defenders with summary contempt will have a chilling effect on access to adequate representation. We acknowledge that continual threats of contempt may chill the bar's ability to adequately represent client interests. We also recognize, however, that contumacious behavior, namely, disobedience of a court order, cannot generally be excused as zealous advocacy. *In re Ellenbogen*, 72 F.3d 153, 158 (D.C. Cir. 1995). As the above-quoted passage from *Sacher* reflects, *supra*, ¶ 18, the duty of an advocate when faced with a clear court order, even one that is wrong, is to comply and respectfully seek review in a higher court if necessary. Both amicus briefs proceed from the premise that the order that counsel violated was an order to have the client give his presentence allocution before the court decided whether to accept the plea agreement, or at least an order that attorney convey to the client the wisdom of going forward under the court's procedure. We have held above that this view of the record is erroneous, and we stress it here again. The court's order was only that attorney consult with the client, and it gave no direction as to what advice attorney should give the client. Nor does this case require us to detail which powers belong to the lawyer and which belong to the client. See *State v. Bean*, 171 Vt. 290, 300, 762 A.2d 1259, 1266 (2000) (noting certain decisions which belong exclusively to the client). While attorney may have believed that a dispute over his power was coming, his refusal to talk with the client was premature.

■ ¶ 22. In short, we do not view this case as one in which the outcome will chill zealous advocacy, as opposed to deter contemptuous behavior. The line that attorney crossed was bright, and he did so out of anger at the judge's procedure, not out of a thoughtful judgment that his actions were necessary to protect his client's interests.

---

¶ 8, 177 Vt. 478, 857 A.2d 295 (mem.) (holding court need not substitute its own judgment as to how event occurred based on testimonial evidence because of videotape of incident).

*Our procedures provide methods to challenge a judge's ruling that violates the governing rules, particularly where constitutional rights are in jeopardy. Contemptuous behavior is not one of those methods.*

## III.

¶ 23. Next, attorney makes a number of objections to the procedures, or absence of procedures, that were employed. The first two objections argue that the trial judge should have been disqualified from determining whether attorney was in contempt, and that due process of law required a hearing on the prior instances of inappropriate conduct the judge relied upon. To address these arguments, we look first at the general procedures for criminal contempt.

¶ 24. Criminal contempt proceedings are governed by Vermont Rule of Criminal Procedure 42, which is "virtually identical to Federal Rule 42." Reporter's Notes, V.R.Cr.P. 42. As stated above, Rule 42(a) contains an authorization for a summary contempt adjudication like the one in this case. Rule 42(b) contains an authorization for "Disposition Upon Notice and Hearing," which applies when Rule 42(a) does not. Rule 42(b) provides for notice and hearing, trial by jury, and trial before a different judge if the charge involves "disrespect to or criticism of a judge."

¶ 25. In his first two procedural arguments, attorney claims that all or part of the procedures provided in Rule 42(b) were required in this case. First, he argues that Judge Toor should have been disqualified because she had become embroiled in a running controversy with attorney and was motivated by "perceived past slights and insulting behavior." Second, he makes a related argument that he was found in contempt for conduct occurring over an extended period of time, some of which was not on the record in the courtroom, and thus due process requires that he have an opportunity to be heard on all the charges. If his arguments are correct, then summary contempt adjudication could not occur in this case.

¶ 26. There are two justifications for summary contempt adjudication: efficiency and necessity. Such adjudication is efficient because the contemptuous conduct has occurred on the record, and before the judge, so that further factual development is unnecessary. *Sacher*, 343 U.S. at 9. Summary contempt adjudication is necessary in order to remove obstructions to the fair administration of justice. *Offutt v. United States*, 348 U.S. 11, 14 (1954). Over time, the necessity justification has become the primary reason for the use of summary procedures.

¶ 27. With this background, we address attorney's argument that Judge Toor should not have presided over the contempt adjudication. The ground for such disqualification first arose in *Offutt*, where the trial court conducted a summary contempt adjudication of trial counsel after a trial had closed and the case was in the hands of the jury. The Court observed that trial judges should not "sit[] themselves in judgment upon misconduct of counsel where the contempt charged is entangled with the judge's personal feeling against the lawyer." *Id.* The Court, however, cited and quoted *Cooke v. United States*, which held that such a rule applied where "'conditions do not make it impracticable, or where the delay may not injure public or private right.'" *Id.* (quoting *Cook v. United States*, 267 U.S. 517, 539 (1925)). This point is reinforced in *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971). There, the Court discussed in detail the judge's options where a lawyer or litigant personally attacks the judge:

> A judge cannot be driven out of a case. Where, however, he does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place.

*Id.* at 463-64.

¶ 28. We addressed this issue in *State v. Allen*, 145 Vt. at 601-02, 496 A.2d at 172-73, where defendant argued that contempt involving personal insults had to be referred to another judge at a later time under Rule 42(b). We stated that a "rule requiring that all flagrant personal insults be responded to only after delay would undermine the court's dignity and its authority. A judge is not merely an individual; he or she represents the authority of the law." *Id.* at 601, 496 A.2d at 172.

¶ 29. In general, the *Offutt* rule — that judges must turn contempt adjudications over to colleagues if they are personally embroiled in disputes with the litigant or lawyer accused of contempt — is not applicable if the judge is acting under Rule 42(a) "the instant the contempt is committed," *Mayberry*, 400 U.S. at 463, out of necessity to prevent obstruction of a proceeding. See *Barlow v. State*, 513 S.E.2d 273, 277-78 (Ga. Ct. App. 1999) (allowing summary contempt after parties disobeyed direct, lawful order and warned parties behavior was contumacious); see generally R. Donaldson, Annotation, *Disqualification of Judge in State Proceedings to*

*Punish Contempt Against or Involving Himself in Open Court and in His Actual Presence*, 37 A.L.R.4th 1004 (1985 & Supp. 2005) (categorizing cases involving disqualification of judges in contempt proceedings). The differences in the requirements of Rules 42(a) and 42(b) are especially significant in small states like Vermont, where immediate action by another judge is usually impossible; as such, summary contempt adjudication in such states would also therefore be impossible. Nonetheless, by this holding, we are not ruling that personal hostility can never reach the stage where disqualification from the imposition of summary contempt is necessary to protect fundamental fairness even where obstruction of the proceeding is occurring. The circumstances of the personal hostility, however, must be extreme to warrant that result.[6] For example, in *Sandstrom v. Butterworth*, 738 F.2d 1200 (11th Cir. 1984) — the only case cited by attorney in which an appellate court ruled that the trial judge should have been disqualified from imposing an immediate summary contempt sentence during trial — the trial judge accused counsel of "acting like an animal" and told him that "for ten years you have had your nauseating effect upon this Court and every other court in this courthouse." *Id.* at 1203, 1204. Counsel's personal retorts were equally extreme. The personal embroilment was far beyond any disqualifying circumstances that might be present here.

¶ 30. Even if the *Offutt* standard applied, we cannot conclude on this record that Judge Toor should have been disqualified. Judge Toor was sitting in a county where one judge covers all courts: civil, criminal, and family. She was at the end of a six-month rotation. Criminal defense for the indigent is provided by a statewide public defender system. 13 V.S.A. §§ 5201-5277. Attorney was a public defender for the county. In this role, he was appearing regularly before Judge Toor. Inevitably, in that extensive interaction, each had views about how the other handled cases, both generally and in specific instances.

¶ 31. As attorney himself has stressed in his brief, we want contempt citations to be used sparingly and in narrow circumstances.

---

[6] If the cause was based on conduct and events in other proceedings, the basic standard would be that for disqualifying a trial judge generally — that is, where the "judge has a personal bias or prejudice concerning a party or a party's lawyer." Code of Judicial Conduct, A.O. 10, Canon 3(E)(1)(a). Thus, the situation must be sufficiently extreme that the judge should have been disqualified from the proceeding that gave rise to the summary contempt judgment.

Thus, to the extent a judge has concerns about the behavior of a lawyer who is appearing regularly in the judge's court, we want the judge to find an outlet for those concerns short of contempt. In the ruling on the motion to vacate the contempt order, Judge Toor detailed the actions she had taken in the past to correct attorney's behavior.

¶ 32. We recognize that attorney vigorously disputes that he had behaved inappropriately in the past, just as he disputes that his behavior was contemptuous on August 30. But this difference over professional conduct does not mean that the judge had developed personal animus against attorney. There is no allegation that attorney made personal attacks on the judge, the most common circumstances in the *Offutt* line of cases. See *Mayberry*, 400 U.S. at 465-66 (noting judge's difficulty in holding impartial contempt hearing after being repeatedly insulted throughout trial); *United States v. Pina*, 844 F.2d 1, 13-14 (1st Cir. 1988) (same). The sentence is not so excessive that it indicates improper motives. Although the judge made serious charges against attorney, all charges involved his professional behavior in specific instances. She said she acted "to punish the behavior [on August 30], to deter similar future behavior by Respondent, and to make clear to others that such behavior would not be tolerated."[7]

¶ 33. We also recognize that, like attorney, Judge Toor appears from the videotape to have become upset and angry over her interaction with attorney.[8] Perhaps her state of mind was demonstrated by her order to have attorney taken away in shackles, an order that was never implemented, and one that she regretted. If anything, however, her visible mental state showed she was reacting to the events of August 30, not imposing a calculated punishment for past behavior.

¶ 34. In conclusion, if we found personal animus in this case sufficient to disqualify Judge Toor, we would have to find such personal

---

[7] In a separate argument, attorney claims that the court misused criminal contempt as a behavior modification tool, made necessary because "kinder and gentler efforts to modify his behavior had been unsuccessful." While the judge used those words in the ruling on the motion to vacate, there is no indication that the judge attempted to lead attorney into contemptuous behavior in order to sanction. Instead the record reflects that Judge Toor believed that holding attorney in contempt was the necessary consequence of his actual behavior on August 30.

[8] In fact, Judge Toor described herself as angry in her ruling on the motion to vacate.

animus in most cases, which would greatly reduce the availability of summary contempt even when necessary to prevent the obstruction of proceedings. We hold that Judge Toor was not disqualified from holding attorney in summary contempt.

¶ 35. We have a similar response to attorney's related argument that due process requires that he have an opportunity to respond to the judge's charges in the ruling on the motion to vacate the contempt order. To address this argument, we start with its presentation to the trial court. Following the contempt certification, attorney filed a motion to vacate the contempt order. The motion presented primarily legal argument, but also asked for an evidentiary hearing on the following issues: (1) whether attorney intended any contempt or disrespect to the court; (2) whether his intent was to represent his client "professionally, effectively and to the best of his abilities"; (3) whether his demeanor was "angry, confrontational, and disrespectful" as the court had found; (4) whether the contempt order was unprecedented in its harshness; and (5) whether the contempt order has had a chilling effect on trial lawyers in Vermont. The court denied the request for an evidentiary hearing because the conduct occurred in the court's presence so that the court had "first-hand knowledge of the relevant facts."

¶ 36. On appeal, attorney reiterates the arguments made to the trial court but relies primarily on the court's ruling with its recitation of past inappropriate conduct. He argues that because the court stated that these past actions were part of the reason for the contempt citation he was entitled to present evidence to meet these charges.

¶ 37. We cannot accept attorney's premise that the ruling on the motion to vacate showed that the contempt citation was made to punish attorney's past behavior. The court stated specifically that "[t]hese incidents were not the basis for the contempt finding." The court stated the basis for the contempt finding:

> Because of this direct refusal to comply with the court's order, as well as the disrespectful way in which it was done and its interference with the ongoing proceeding, the court concluded that it had no choice but to take immediate action. Such action was needed to punish the behavior, to deter similar future behavior by Respondent, and to make clear to others such behavior would not be tolerated.

On the other hand, the court made statements that indicate that she used discretion in determining whether a contempt citation was necessary, as well as discretion in choosing the sanction. In words emphasized by attorney, she stated:

> These [prior] incidents were not the basis for the contempt finding, but they contributed to the court's decision that there was no less severe action that would adequately address the situation. They also contributed to the court's decision to impose the sanction that it chose, rather than a monetary sanction.

These words are fully consistent with her statement that the contempt sanction was imposed for attorney's actions on August 30. As we stressed above, there will always be a context for a contempt sanction, and we do not want the court to strike too soon with a summary contempt judgment. Moreover, the sanction chosen is a criminal sentence that reflects the crime committed as well the circumstances and record of the person before the court. The one hallmark of the reported cases is that the judge involved rarely, if ever, finds contempt at the first opportunity, attempting other ways of correcting the offending conduct. That is a main reason why we accord discretion to a summary contempt judgment. See *Allen*, 145 Vt. at 600, 496 A.2d at 172 ("Orders of contempt are discretionary acts.").

¶ 38. Properly exercised, summary criminal contempt is consistent with due process. *In re Oliver*, 333 U.S. 257, 275 (1948). We cannot conclude that criminal contempt was improperly exercised here. If anything, in comparison to other cases described in the reported decisions, the trial judge in this case was more candid and detailed in describing why she held attorney in contempt and why she imposed the sanction she did. Nevertheless, as we have held above, valid grounds existed to hold attorney in contempt, and the judge acted within her discretion in doing so, and in imposing the sanction she chose. Thus, the court did not err in refusing to consider the evidence attorney proffered in his motion to vacate. We do not believe that the additional information contained in the written ruling on the motion to vacate retroactively created a due process deficiency in the summary contempt adjudication or created the right to a hearing on the motion to vacate. If we found a due process right to a

hearing on how the judge exercised her discretion, we would essentially eliminate the use of summary criminal contempt.[9]

## IV.

¶ 39. Attorney makes two additional procedural arguments: the trial court could not find attorney in contempt without first giving him an opportunity to respond to the contempt charge; and the court could not hold him in contempt without first warning him that his conduct would produce that result. The first argument was squarely rejected in *State v. Allen*, 145 Vt. at 602 n.2, 496 A.2d at 173 n.2. We see no reason to reconsider that holding in this case where the direction to attorney was clear and was stated three times, and attorney's rejection of the judge's direction was equally clear. Attorney explained why he would not follow the court's direction; an additional opportunity to explain his conduct would have made little difference. Thus, even those courts in jurisdictions that ordinarily require that the person charged with summary contempt be given an opportunity to respond, see, e.g., *Doral Produce Corp. v. Paul Steinberg Assoc.*, 347 F.3d 36, 45 (2d Cir. 2003) (recognizing factors that obviate need to afford alleged contemnor right to defend himself), would be unlikely to reverse because of the absence of such opportunity in this case.

¶ 40. We also reject attorney's second procedural argument. This argument was not raised in attorney's motion to vacate and was therefore waived. Even if we reached the merits, we would conclude it is based on a factual error. Shortly before attorney was found in contempt, the trial court warned attorney that he might be held in contempt. Attorney has interpreted this warning as responding only to attorney's practice of talking over the judge. We read the warning above, *supra*, ¶ 4 n.3, more broadly. We believe the court stated that attorney should stop arguing with the directions of the court or he would be held in contempt.

¶ 41. In any event, we would not reverse for lack of a warning in this case. Attorney urges us to adopt the relevant standard of the

---

[9] This is our fundamental disagreement with the dissent. The dissent denies that its desired rule — "[a]ny time a finding of or a sentence for contempt relies on alleged past misconduct," summary contempt cannot be used — would in effect eliminate the use of summary criminal contempt. *Post*, ¶ 58. We reiterate that there will almost always be a short or long history of improper actions before the judge concludes that only an adjudication of contempt will allow the proceeding to go forward properly.

American Bar Association Criminal Justice Standards. ABA Criminal Justice Standards, *Special Functions of the Trial Judge*, Standard 6-4.3 (2d ed. 1980). That standard requires a clear warning if the conduct was not "willfully contemptuous." *Id.* Standard 6-4.2(a) The court found the conduct willfully contemptuous. Thus, the Standards would not require a warning in this case.

## V.

¶ 42. Last, attorney claims that, even if his acts were contemptuous, the court's sentence was an abuse of its discretion because it constituted a punishment and was unduly influenced by past history. "Punishment for contempt committed in the presence of the court is within the court's sound discretion and in the absence of an abuse thereof will not be disturbed on appeal." *MacInnis*, 191 F.2d at 162. Imprisonment is recognized by other courts as an appropriate sanction for disobedience of court orders. *Id.* (affirming three-month sentence for contempt consisting of disregarding orders and disrupting trial). We find no abuse in the forty-five-minute incarceration sanction.

¶ 43. As we have held above, we conclude that the court acted to punish attorney's behavior on August 30 and not to punish his behavior in the past. The court may, however, consider past behavior in fashioning an appropriate sanction. See *Allen*, 145 Vt. at 602, 496 A.2d at 173 (concluding that trial court did not abuse its discretion in imposing ninety-day sentence for contempt where contemnor had a history of convictions, rather than removing contemnor from courtroom). Thus, the court appropriately considered attorney's prior behavior in determining its sentence for contempt.

*Affirmed.*

¶ 44. **Eaton, D.J.,** dissenting. The power of a trial court to summarily punish an attorney or party for criminal contempt is unique, as this case demonstrates. It is the only circumstance I am aware of in which a court may deprive an individual of liberty with none of the procedural safeguards that normally attend such a deprivation. It is for precisely this reason that the power of summary punishment of contempt has been strictly limited by the courts.

¶ 45. To my knowledge, this is the first time in Vermont that an attorney has been criminally convicted and held in jail for efforts to protect a client's rights. This is of even greater concern given that attorney in this case never had the opportunity for a hearing. Rather,

he was subject to a criminal conviction and yet received less due process than someone who is charged with a noise complaint or a speeding ticket. While the trial judge must have the power to maintain order and preserve respect for the institution of the court, this cannot be done at the expense of procedural fairness.

¶ 46. Under Vermont Rule of Criminal Procedure 42(a), summary punishment may only be imposed where the misconduct constituting contempt occurs in the immediate presence of the court. In this case, there were two stages in the trial court's decision: (1) finding that an act of contempt had been committed; and (2) deciding the scope and severity of punishment for the contempt. With regard to the first stage, the trial court arguably relied solely on attorney's contemporaneous conduct (i.e., his disobedience of a court order on August 30, 2004) in finding that attorney had committed an act of contempt. But with regard to the second stage, the trial court explicitly stated that it considered and relied upon a wider array of alleged past conduct by attorney in deciding the scope and severity of attorney's punishment. Under these circumstances, the trial court exceeded the scope of its authority in summarily punishing attorney without a hearing on his disputed past conduct. I would reverse and remand for such a hearing.[10]

---

[10] While not the focus of this dissent, I also disagree with the majority that the collateral bar rule applies to preclude review of the merits of the trial court's order. The collateral bar rule mandates that attorneys preserve for appeal their objections to a trial court's order rather than simply disobey the order. *Maness v. Meyers*, 419 U.S. 449, 458-59 (1975). As the majority recognizes, a necessary exception to this rule exists where effective appellate review is not available. See *ante*, ¶ 11. Yet the majority does not suggest how attorney in this case could have obtained review of the court's order other than through his disobedience.

Here, attorney's objection to consulting with his client would not be a basis for reversible error such that it could be reviewed in conjunction with an appeal in the underlying criminal matter. Neither was this a situation that would recur. Cf. *State v. Cherryhomes*, 840 P.2d 1261, 1263 (N.M. Ct. App. 1992) (reviewing contempt charge for attorney's violations of dress code). Stated another way, there was no way for attorney to both obey the order and preserve the point for appeal. Because attorney would not otherwise have had an opportunity for appellate review, he should be able to address the merits of the trial court's order in the appeal of his contempt conviction.

Upon reviewing the merits of the trial court order, I would first consider whether attorney was properly concerned about a potential violation of his client's Fifth Amendment rights and whether his disobedience of the trial court's order to consult was motivated by that concern. While compliance with the court's order to consult may not have led directly to such a violation, continued participation in the plea process as

## I.

¶ 47. The trial court's initial written certification of the contempt, entered the day after the trial court ordered attorney held in custody, focused on attorney's conduct of that day, stating that attorney's "direct refusal of the court's order, along with the angry, confrontational, and disrespectful manner in which [attorney] did so, made it impossible to proceed with the case." The court went on to note that "this [was] not the first time [attorney] has behaved inappropriately in the courtroom, as well as in chambers. The court has been extremely patient with his outbursts in the past, but this conduct cannot continue."

¶ 48. The trial court elaborated on its reasoning in a much lengthier written order denying attorney's motion to vacate. At the outset, the court stated that because the decision turned on conduct that occurred in the court's presence, an evidentiary hearing was unnecessary. However, the discussion of the contempt finding leads off with the observation that "[t]he undersigned has never in twenty-two years in the legal profession ... seen an attorney behave in as disrespectful and angry a manner towards a judge as [attorney] has on repeated occasions, both in the courtroom and in chambers." Further, an entire section of the order is devoted to discussion of "Past Inappropriate Conduct." In this section, the court explains that while "[t]hese incidents were not the basis for the contempt finding, ... they contributed to the court's decision that there was no less severe action that would adequately address the situation." In conclusion, the court reiterates that it "had been faced over a period of months with repeated challenges to its authority, displays of anger, and other unprofessional conduct" by attorney. The court emphasizes that "[i]f the conduct on August 30 had been the first incident of oppositional and disrespectful behavior by [attorney], the court likely would not have taken the action it did," but "the prior history" and "past experience" with attorney made it "apparent that a severe sanction was necessary to convey the message that such behavior was unacceptable." Thus, the behavior being punished

interpreted by the trial court could have jeopardized the client's rights indirectly. Second, upon reviewing the videotape of the hearing, I would conclude that attorney's behavior was not so disruptive as to support a finding of contempt based on his tone and attitude alone. While attorney might and should have conducted himself with greater decorum, these events all took place in a few moments under escalating conditions. Many courts routinely hear far worse from pro se litigants.

("such behavior") by all appearances includes the past misconduct referenced earlier in the same paragraph.

¶ 49. The trial court's order supporting the finding of contempt and its punishment in essence characterizes attorney's conduct on August 30, 2004 as the "last straw" in a series of encounters over an extended period of time where attorney was disrespectful of the court. Indeed, the tone and reasoning of the order are permeated with an awareness and condemnation of alleged past misconduct by attorney, undermining the court's assertion that the contempt finding itself was not based, at least in part, on attorney's past misconduct. However, even assuming that the contempt finding was based solely on attorney's contemporaneous conduct of August 30, 2004, the court explicitly concedes that attorney's past misconduct was determinative in the second stage of its decision: punishing attorney with 45 minutes in custody.

## II.

¶ 50. Under Vermont Rule of Criminal Procedure 42, the trial court's admitted consideration of attorney's past conduct should have entitled attorney to the minimal due process protections of notice and an opportunity to be heard. As discussed by the majority, Rule 42 provides two distinct procedures for addressing contempt: summary disposition and disposition upon notice and a hearing. Under the language and structure of the rule, notice and a hearing is the default procedure that should be followed unless the special circumstances warranting summary disposition are present.[11] See V.R.Cr.P. 42(b) (criminal contempt shall be prosecuted upon notice except where circumstances of 42(a) apply) & 42(a) (criminal contempt may be punished summarily where misconduct was committed in the actual presence of the court); see also State v. Lafayette, 152 Vt. 108, 111 n.2, 564 A.2d 1068, 1069 n.2 (1989) (characterizing summary punishment of contempt under Rule 42(a) as exception to general rule of notice and hearing).

¶ 51. Case law interpreting Rule 42 and the analogous federal rule has emphasized that: (1) summary disposition is an extraordinary and narrow power; (2) this power is necessary for courts to maintain order where misconduct threatens the administration of justice; and

---

[11] Rule 42(b) also provides for the right to a jury trial, but this would only be applicable to the finding of contempt, not the sentencing phase.

(3) the fact that the misconduct occurs in the presence of the court and that there is no delay in finding and punishing the contempt excuses the absence of normal due process protections.

> Because the summary contempt sanction is not subject to the usual requirements of a jury trial or notice and opportunity to be heard, summary contempt is a rule of necessity, reserved for exceptional circumstances and a narrow category of contempt. [Rule 42] allows summary proceedings for criminal contempt based on misconduct in the court's presence. . . . Both the court's role as an eyewitness and the desirability of a swift response militate against observance of the usual procedural safeguards.

*United States v. Marshall*, 371 F.3d 42, 45-46 (2d Cir. 2004) (citations, footnote, and quotations omitted). In the absence of these circumstances, summary punishment of contempt is not available. See, e.g., *Walker v. Walker*, 123 Vt. 430, 432, 192 A.2d 460, 461 (1963) (holding that due process requirement of an opportunity to be heard applies where alleged contemptuous conduct took place out of presence of court) (*superseded by rule on other grounds as recognized by Chaker v. Chaker*, 155 Vt. 20, 29, 581 A.2d 737, 742 (1990)).

¶ 52. Thus, the justification for permitting the power of summary punishment is twofold: (1) because the misconduct is immediately observed by the court, evidentiary and procedural concerns are not at issue; and (2) in the absence of a summary procedure, the trial court would be unable to put an immediate end to misconduct disrupting the administration of justice. The justifications for summary punishment, in turn, define and limit the scope of the appropriate use of the summary punishment power. Stated another way, the power of summary punishment is necessary to remove obstacles to the administration of justice, but it must be used only to serve this end — not to punish past conduct. See *Pounders v. Watson*, 521 U.S. 982, 987 (1997) (recognizing that summary punishment of contempt is appropriate where "the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court") (citation and quotations omitted); *United States v. Cooper*, 353 F.3d 161, 164 (2d Cir. 2003) (noting that "[t]he summary contempt power is generally limited to cases in which immediate corrective steps are needed to restore order and maintain the dignity and authority of the court") (quotations omitted).

## III.

¶ 53. The majority recognizes that the trial court considered past misconduct in exercising its discretion with respect to punishment, *ante*, ¶ 37, but justifies the trial court's reliance on past misconduct in two ways. First, noting that "there will always be a context for a contempt sanction," the majority draws an analogy between summarily punishing contempt and criminal sentencing. *Id.* The majority asserts that, just as a criminal sentence reflects not only the crime for which the defendant was convicted, but also surrounding circumstances, a trial court should be able to consider past misconduct in summarily punishing contempt. *Id.* The critical distinction the majority overlooks, however, is that a criminal defendant has already been afforded ample due process protections throughout the course of prosecution, conviction and sentencing. See, e.g., *In re Carter*, 2004 VT 21, ¶ 49, 176 Vt. 322, 848 A.2d 281 (criminal defendant's right to counsel); *State v. Merchant*, 173 Vt. 249, 258, 790 A.2d 386, 393 (2001) (criminal defendant's right against self-incrimination); *In re Cardinal*, 162 Vt. 418, 419, 649 A.2d 227, 229 (1994) (criminal defendant's right to jury trial); V.R.Cr.P. 32 (procedural protections during sentencing). Further, under Rule 32(c)(4), a criminal defendant has a right to comment and present evidence on sentencing issues.[12]

¶ 54. By contrast, a party or attorney subject to summary punishment enjoys none of these protections because the contempt finding is made on the spot. For example, attorney in this case vigorously disputes the trial court's characterization of his alleged past misconduct. But unlike any other criminal defendant, who would be entitled to comment and present evidence relevant to sentencing under Rule 32(c)(4), attorney had no opportunity to contest these allegations. While summary process for contempt may be desirable for the reasons discussed above, the absence of due process protections at any stage defeats the analogy drawn by the majority to the process of criminal sentencing.

---

[12] Not only does an attorney subject to summary punishment for contempt receive less due process than a criminal defendant, he or she also receives less due process than an attorney sanctioned under the inherent powers of the court. In such cases, the sanctioning court must not only make a finding that the attorney acted in bad faith, but also provide notice and an opportunity for a hearing. *Lawson v. Brown's Home Day Care Center, Inc.*, 2004 VT 61, ¶ 14, 177 Vt. 528, 861 A.2d 1048 (mem.). If the sanction imposed is punitive in nature, additional due process protections may apply. *Id.*

¶ 55. Second, the majority draws a comparison between the facts of this case and those in *State v. Allen*, 145 Vt. 593, 496 A.2d 168 (1985). Specifically, the majority cites *Allen* for the proposition that "[t]he court may ... consider past behavior in fashioning an appropriate sanction." *Ante*, ¶ 43. The *Allen* Court, however, did not squarely address this question, and the decision does not support such a broad or conclusive proposition. Rather, the Court in *Allen* reasoned that the severity of the penalty for contempt in that case was not excessive because (1) as a repeat offender, the defendant was on notice as to proper decorum in a courtroom, and (2) the defendant had been disruptive previously during the same hearing. See *Allen*, 145 Vt. at 602, 496 A.2d at 173. Here, there is no issue of whether attorney was aware of proper decorum, nor was consideration of his past misconduct limited to behavior during the same hearing (or even in the same case). Neither of the elements of the holding in *Allen* supports the proposition that an attorney's or party's past misconduct — on multiple earlier dates and during multiple different proceedings — may be considered in deciding the severity of punishment for contempt, especially where that conduct is disputed.

¶ 56. Finally, in addition to the above disagreements with the majority's approach, I also believe the majority spends too much time examining the question of whether the trial court suffered from personal bias in this case. *Ante*, ¶¶ 23-34. This is understandable because attorney focuses on the same issue in his appellate brief. I believe, however, that the personal bias issue is beside the point here. In short, while personal bias on the part of the court must be shown to demonstrate entitlement to a hearing before a different judge, the presence or absence of personal bias has no bearing on the more fundamental question of whether attorney was entitled to the basic procedural protections of Rule 42(b). A lack of personal animus is not equivalent to due process. Under the rule, entitlement to notice and a hearing is assumed unless the trial court makes findings supporting imposition of summary punishment. Focusing on whether attorney made a showing of personal bias has the effect of suggesting that attorney must affirmatively demonstrate his entitlement to notice and a hearing, which is not the case.

¶ 57. As recognized in *Allen*, the fundamental distinction between situations where summary punishment is available and those where it is not is whether punishment is immediate or delayed, not whether the contempt is personal or impersonal in nature. See *Allen*, 145 Vt. at 601, 496 A.2d at 172-73 (holding that the trial court should be

empowered to deal with some conduct immediately, to preserve authority of the court, even if contempt is personally directed at judge). The majority itself notes that the *Offutt* rule (i.e., disqualification of the presiding judge if contempt is personal in nature) does not apply where the trial court is acting under Rule 42(a) "the instant the contempt is committed." *Ante*, ¶ 29 (quoting *Mayberry v. Pennsylvania*, 400 U.S. 455, 463 (1971)). This further emphasizes that the narrow purpose of summary punishment is to put an end to disruptive conduct without delay — not to punish past behavior or even deter future misdeeds.

## IV.

¶ 58. In my view, the trial court exceeded the scope of its authority in employing summary punishment under the facts of this case. The majority contends that "[i]f we found a due process right to a hearing on how the judge exercised her discretion, we would essentially eliminate the use of summary criminal contempt." *Ante*, ¶ 38. I respectfully disagree. I believe for the power of summary punishment of contempt to be used effectively and fairly there must be a clear rule for when use of that power is permissible. The distinction between conduct that is observed and punished simultaneously and alleged past misconduct is a bright-line rule that would be easy to enforce and understand. Any time a finding of or a sentence for contempt relies on alleged past misconduct, and therefore requires factfinding beyond the scope of what the judge has immediately observed, the additional procedural protections of Rule 42(b) should apply.

¶ 59. I am fully cognizant of the need and right of the trial judge to control the courtroom and maintain the dignity and authority of the court. In that regard, the presiding judge must be given the authority to determine and punish summary contempt when it occurs in the judge's presence. Here, it is admitted that the trial court imposed a sentence that it would not have but for the alleged instances of past misconduct. These allegations should have been tested in the crucible of a hearing. Attorney here has been denied any opportunity to do so. I cannot in good conscience agree that he has been afforded the protections that due process requires.

¶ 60. For these reasons, the trial court should have allowed a hearing on the motion to vacate the contempt order, and I would remand to the trial court for that purpose. I respectfully dissent.