928 A.2d 1210 (2007)
2007 VT 54
In re Richard LAWS.
No. 2005-320.
Supreme Court of Vermont.
June 22, 2007.
*1211 Allison N. Fulcher of Martin & Associates, Barre, and Richard Laws, Pro Se, Beattyville, Kentucky, for Petitioner-Appellant.
William H. Sorrell, Attorney General, John Treadwell, Assistant Attorney General, Montpelier, and John T. Quinn, Addison *1212 County State's Attorney, Middlebury, for Respondent-Appellee.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. BURGESS, J.
¶ 1. Petitioner appeals an order of the superior court granting summary judgment in favor of the State on his request for post-conviction relief (PCR). The superior court denied relief, concluding that under 13 V.S.A. § 7131 it did not have subject matter jurisdiction. The court also concluded, in the alternative, that all of petitioner's claims were barred because he failed to raise them in a prior PCR. We hold that the superior court erred in dismissing the PCR under § 7131 because the language the court relied on affects venue only and does not limit a court's subject matter jurisdiction over a PCR. We further hold that petitioner may go forward with his claims, even though he did not raise them in his first PCR, to the extent he can demonstrate (1) cause for not raising the issues previously and (2) prejudice if the issues are not heard. Claims that do not meet this standard, as well as those claims actually raised and decided on the merits in connection with petitioner's first PCR, are properly barred from relitigation. Accordingly, we reverse the superior court's decision and remand the matter for further proceedings consistent with the standard articulated in this opinion.
¶ 2. We summarized the facts underlying petitioner's criminal convictions in our decision affirming denial of his first PCR:
The crimes occurred in the late evening of June 19, 1992. While driving from Mad Mountain Tavern in Waitsfield that evening, the victim's tires went flat; the evidence suggested that defendant himself had punctured her tires. Defendant pulled up to her stopped vehicle and offered her a ride, which the victim accepted. Rather than bring her home, however, defendant drove the victim to the Granville Gulf area where he raped her. After raping her, defendant drove the victim to a more remote location and beat her severely with a blunt instrument. The victim left behind a large deposit of blood with head hair that the police later discovered during their investigation. The victim's injuries were life threatening and included a fractured skull.
In re Laws, 2004-118, slip op. at 1 (Vt. Sept. 29, 2004) (unreported mem.). Based on these facts, petitioner was charged with kidnapping, aggravated sexual assault, and aggravated assault.
¶ 3. There was apparently some initial uncertainty as to whether the crime should be prosecuted in Addison or Washington County. The charges were originally filed in Washington County district court, but petitioner filed a motion to dismiss, arguing that venue was improper because the offenses had not taken place in that county. See 13 V.S.A. § 4601 (providing that criminal charges be tried in county where offense was committed). The State conceded the issue, dismissed the charges filed in Washington County, and then filed charges in Addison County. Despite the change in venue, however, the Addison County State's Attorney appointed a Washington County State's Attorney to prosecute the matter. Ultimately, petitioner entered into a plea agreement that was signed by petitioner, his attorney, and the Washington County State's Attorney (acting on behalf of Addison County). The plea agreement was entered in Washington County district court, and it was the Washington County district court that sentenced petitioner to twenty to thirty-five years to serve. Petitioner did not pursue *1213 a direct appeal from his conviction or sentence.
¶ 4. Petitioner filed his first PCR[1] in Washington Superior Court in July 2000, asserting that his guilty plea violated double jeopardy. The superior court entered judgment in favor of the State, concluding that petitioner's voluntary plea waived any double jeopardy claim. This Court affirmed on appeal. See In re Laws, No.2004-118, slip op. at 1-2.
¶ 5. Petitioner then filed a second PCR in Addison Superior Court in October 2004, arguing: (1) the plea agreement violated double jeopardy; (2) the Washington County district court lacked jurisdiction to accept the plea agreement; (3) the Washington County State's Attorney lacked the authority to sign the plea agreement; (4) the plea colloquy did not meet the requirements of Vermont Rule of Criminal Procedure 11(f); and (5) petitioner's attorney provided ineffective assistance. The State moved for summary judgment on the merits of these claims, but also argued that the superior court did not need to decide the PCR on the merits because it was a second or successive petition barred by 13 V.S.A. § 7134. The superior court entered judgment for the State, concluding that it did not have jurisdiction over the PCR under 13 V.S.A. § 7131, and, alternatively, that it was not obligated to hear the PCR because it was a second or successive petition. Petitioner appealed.

I.
¶ 6. In his pro se appellate brief, petitioner reiterates his argument on the merits of his claim that the Washington County district court lacked jurisdiction to accept his plea in the underlying criminal proceeding. He also asserts in passing that the plea colloquy did not comply with Rule 11(f). Petitioner does not address the superior court's conclusion that it lacked jurisdiction over the PCR, or the alternative ground that the claims failed under the bar against second or successive PCRs. The State, in turn, responds to petitioner's merits-based argument, only briefly reiterating the § 7134 argument.
¶ 7. Dismissing the PCR, the superior court did not engage the merits of petitioner's claims. Rather, the court concluded that it lacked jurisdiction to consider the PCR, relying on the language of 13 V.S.A. § 7131, which provides:
A prisoner who is in custody under sentence of a court and claims the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or of the state of Vermont, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may at any time *1214 move the superior court of the county where the sentence was imposed to vacate, set aside or correct the sentence.
(Emphasis added.) While it is true that the post-conviction-relief statute requires that a defendant seek relief in "the superior court of the county where the sentence was imposed," id., we have previously explained that this provision goes to venue and not subject matter jurisdiction:
Section 7131 . . . does not concern subject-matter jurisdiction of the court in which the PCR petition is heard. The statute indicating the county where the PCR should be brought was enacted to simplify the often cumbersome procedures associated with habeas corpus. Requiring the superior court of the county of sentencing to hear the PCR petition was designed to provide a more convenient forum for obtaining relevant records and witnesses. As a venue provision, the statute does not purport to limit subject-matter jurisdiction.
In re Hanson, 160 Vt. 111, 113, 623 A.2d 466, 467 (1993) (citations and quotations omitted). Accordingly, while a party may seek to transfer venue under the authority of the statute, the superior court erred in concluding that it was without jurisdiction to hear defendant's petition.

II.
¶ 8. The superior court provided an alternative basis for granting summary judgment to the State, noting that under 13 V.S.A. § 7134 the court was "not required to entertain a second or successive motion for similar relief on behalf of the same prisoner." The court determined, based on State v. Provencher, that the bar against second or successive petitions applied to "questions which the applicant knew of, but deliberately, or without adequate excuse, failed to raise either in the proceeding which led to his conviction or in prior post-conviction proceedings." 128 Vt. 586, 591-92, 270 A.2d 147, 150 (1970) (Holden, C.J., concurring, with all members of the Court in accord). The superior court did not, however, make any findings to support its conclusion that petitioner "deliberately, or without adequate excuse" abandoned his claims, and so a remand for further findings is required.
¶ 9. We take this opportunity to elaborate on the standard the superior court should apply on remand.[2] Some background on post-conviction relief and the bar against second or successive petitions will properly frame the issues presented to us in this appeal. The purpose of post-conviction relief under 13 V.S.A. § 7131 is to provide prisoners with an opportunity to challenge the legality of their confinement, and thus "to guard against illegal restraints on liberty." In re Stewart, 140 Vt. 351, 359, 438 A.2d 1106, 1109 (1981). One fundamental aspect of post-conviction relief is that a challenge to confinement may be brought "at any time." 13 V.S.A. § 7131. Nonetheless, in other respects, "[p]ost-conviction relief is a limited remedy." In re Grega, 2003 VT 77, ¶ 6, 175 Vt. 631, 833 A.2d 872 (mem.). Post-conviction-relief proceedings are not a vehicle for addressing the petitioner's guilt or innocence, nor are they a substitute for direct appeal of a conviction or sentence. Stewart, 140 Vt. at 360, 438 A.2d at 1110. Rather, claims for PCR are limited to collateral attacks on the petitioner's conviction. For example, a PCR may raise ineffective assistance of counsel, a *1215 constitutional challenge to the statute under which the petitioner was convicted or sentenced, or the adequacy of a Rule 11 plea colloquy. In forwarding such arguments, "the petitioner has the substantial burden of proving by a preponderance of the evidence[] that fundamental errors rendered his conviction defective." Grega, 2003 VT 77, ¶ 6, 175 Vt. 631, 833 A.2d 872 (citation and quotation omitted).
¶ 10. There are also procedural limitations on the issues that may be raised in a PCR. A PCR may not raise an issue that was litigated in the criminal trial but deliberately bypassed on direct appeal. Stewart, 140 Vt. at 361, 438 A.2d at 1110 (holding that doctrine of laches is not applicable to PCR proceedings but further holding that an issue is barred from consideration in PCR if issue was deliberately bypassed on direct appeal).[3] Further, § 7134 provides that a court is "not required to entertain a second or successive motion for similar relief on behalf of the same prisoner."
¶ 11. There have been but a few occasions to consider the scope of the § 7134 limitation. See In re Reuschel, 141 Vt. 200, 203, 446 A.2d 343, 344 (1982) (Underwood, J., concurring) (second PCR properly dismissed where it was a "thinly disguised rehash of the first"); In re Mayer, 131 Vt. 248, 250-51, 303 A.2d 803, 804 (1973) (second PCR could have been denied under § 7134 where petitioner "had every opportunity to challenge his . . . conviction through his appeal, his various motions for post-conviction relief and his motions to the Federal Court"); Garceau v. State, 126 Vt. 516, 520, 236 A.2d 661, 664 (1967) (dismissal under § 7134 justified where merits of claims had been "thoroughly presented and litigated with the assistance of . . . counsel in a full evidentiary hearing"). In addition, in a succinct opinion, we cited United States Supreme Court precedentrather than our § 7134for the proposition that
a court is not required to entertain a second or successive motion for post-conviction relief if: the same ground was determined adversely to the petitioner in an earlier petition, the prior determination was on the merits, and the ends of justice would not be served by reaching the merits of the subsequent application.
In re Currier, 147 Vt. 645, 645, 513 A.2d 41, 41 (1986) (mem.) (citing Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). From these cases, it is clear that § 7134 bars relitigation of claims actually raised and decided on the merits in an earlier PCR. What is less clear, however, is the extent to which § 7134 bars a second PCR based on different grounds, and whether it matters that the petitioner could have raised those grounds in the earlier PCR, but failed to do so.
¶ 12. This is the question left unresolved in Provencher when the Court faced a situation similar to that presented here. The petitioner in Provencher had entered a guilty plea from which he did not pursue a direct appeal, and he had also filed an earlier PCR which was denied on the merits. 128 Vt. at 586, 270 A.2d at 148. We noted that § 7134 barred any "second or successive [PCR] motion for similar relief," and that under those terms, petitioner's second PCR was precluded because it sought "similar relief"that is, like the first PCR, the second PCR sought to have the petitioner's conviction set aside and his sentence vacated. Id. at 587-88, 270 A.2d at 148. Nonetheless, without extensive explanation, *1216 we considered the merits of petitioner's argument because it presented different grounds for relief than claimed in his first PCR, but we ultimately ruled that "respondent has failed to show in his second petition for relief from confinement anything that he could not have raised in his first petition for such relief." Id. at 590, 270 A.2d at 150. In a concurring opinion joined by the majority, Chief Justice Holden observed in dicta that § 7134
does not mean that the first application bars, with total finality, all grounds that otherwise might justify post-conviction relief. Only those factual or legal contentions actually adjudicated or questions which the applicant knew of, but deliberately, or without adequate excuse, failed to raise either in the proceeding which led to his conviction or in prior post-conviction proceedings are foreclosed.
Id. at 591-92, 270 A.2d at 150.
¶ 13. Justice Holden based his statement on the United States Supreme Court's decision in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). In that case, the Court interpreted 28 U.S.C. § 2255the federal counterpart to Vermont's § 7134 which provided that a court "shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."[4] Act of June 25, 1948, ch. 646, 62 Stat. 967; see Provencher, 128 Vt. at 591, 270 A.2d at 150 (Holden, C.J., concurring) ("The federal post-conviction statute contains substantially the same language used in [Vermont's] section 7134."). The question before the Sanders Court was the extent to which this provision limited a prisoner's ability to have a second or successive petition heard on the merits. At the outset, the Court concluded that the language of the provision could not be interpreted literally-that is, as barring all efforts to obtain "similar relief" because this would categorically bar all subsequent petitions regardless of the grounds on which they were advanced. Sanders, 373 U.S. at 13, 83 S.Ct. 1068. This, in turn, could unconstitutionally deprive a prisoner of the remedy of habeas corpus. Id. at 13-14, 83 S.Ct. 1068.
¶ 14. The Sanders Court noted that prisoners were historically afforded broad access to successive petitions. Ordinarily, the doctrine of res judicata precludes a litigant from raising a claim that was or could have been fully litigated in a prior judicial proceeding. See In re St. Mary's Church Cell Tower, 2006 VT 103, ¶ 3, ___ Vt. ____, 910 A.2d 925 (mem.). Res judicata, however, has traditionally not been applied to habeas corpus relief in part because, at common law, there was no opportunity to appeal the denial of a habeas corpus application, and therefore successive petitions substituted for appellate review. Sanders, 373 U.S. at 7-8, 83 S.Ct. 1068. There was also a more fundamental reason for not applying the doctrine to habeas corpus relief: namely, the nature of the writ as the last resort for challenging the exercise of governmental power. Id. at 8, 83 S.Ct. 1068 ("If government is always to be accountable to the judiciary for a man's imprisonment, access to the courts on habeas must not be . . . impeded [by operation of res judicata]. The inapplicability of res judicata to habeas, then, *1217 is inherent in the very role and function of the writ." (citation, quotation, and alteration omitted)).
¶ 15. Absent any reasonable procedural limits, however, successive motions on different grounds, previously known but not previously asserted, could endlessly strain judicial resources to the point of abuse. The Sanders Court examined its prior habeas corpus decisions that, while failing to set forth a rule to be applied in other cases, nonetheless "identified situations where denial without hearing is proper even though a second or successive application states a claim for relief." Id. From review of these cases, the Court concluded that "the judicial and statutory evolution of the principles governing successive applications for federal habeas corpus and motions under [the federal] § 2255 has reached the point at which the formulation of basic rules to guide the lower federal courts is both feasible and desirable." Id. at 15, 83 S.Ct. 1068.
¶ 16. The rules developed by the Court were as follows. First, the Court defined the circumstances under which previously litigated claims could be barred:
Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.
Id. (footnote omitted). Second, the Court identified the concept of "abuse of the writ":
No matter how many prior applications for federal collateral relief a prisoner has made, the principle elaborated [above] cannot apply if a different ground is presented by the new application. So too, it cannot apply if the same ground was earlier presented but not adjudicated on the merits. In either case, full consideration of the merits of the new application can be avoided only if there has been an abuse of the writ or motion remedy; and this the Government has the burden of pleading.
Id. at 17, 83 S.Ct. 1068. The Court offered as an example a situation where "a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one." Id. at 18, 83 S.Ct. 1068. While the right to habeas corpus relief requires that prisoners have an adequate opportunity to challenge the legality of their incarceration, "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." Id.
¶ 17. Beyond these statements, however, the Sanders Court declined to elaborate a specific test for when a second or successive petition should be considered an abuse of the writ. Both petitioner and the State posit that the appropriate standard is set forth in McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In McCleskey, the Court revisited the issue of "writ abuse," recognized, but unresolved, by Sanders:
[M]uch confusion exists . . . on the standard for determining when a petitioner abuses the writ. Although the standard is central to the proper determination of many federal habeas corpus actions, we have had little occasion to define it. Indeed, there is truth to the observation that we have defined abuse of the writ in an oblique way, through dicta and denials *1218 of certiorari petitions or stay applications.
Id. at 477, 111 S.Ct. 1454.
¶ 18. In McCleskey, the Court sought "to define the doctrine of abuse of the writ with more precision." Id. at 489, 111 S.Ct. 1454. While Sanders provided the example of claims deliberately withheld by a petitioner, McCleskey acknowledged that "[a]buse of the writ is not confined to instances of deliberate abandonment [of a claim]." Id. Thus, McCleskey held that "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." Id.
¶ 19. To identify exactly what conduct this standard would encompass, the Court imported a standard from a different aspect of habeas corpus litigation: the bar against federal courts considering claims that were procedurally defaulted in state courtreferred to as "inexcusable neglect." The Court found this standard appropriate because the two situations present the same reasons for disallowing the defaulted claim: "[B]oth the abuse-of-the-writ doctrine and our procedural default jurisprudence concentrate on a petitioner's acts to determine whether he has a legitimate excuse for failing to raise a claim at the appropriate time." Id. at 490, 111 S.Ct. 1454.
¶ 20. The "inexcusable neglect" standard requires a petitioner to show two elements: cause and prejudice. Id. at 493, 111 S.Ct. 1454. "[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim" in the earlier proceeding.[5]Id. (citation and quotation omitted). Examples include situations where a factual or legal basis for a claim was not available at the time of the earlier proceeding, instances of official interference (such as the state's failure to provide requested evidence), or ineffective assistance of counsel. Id. at 493-94, 111 S.Ct. 1454. After demonstrating cause for the default, the petitioner must show that actual prejudice resulted. Id. at 494, 111 S.Ct. 1454. To demonstrate actual prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).
¶ 21. The McCleskey Court further clarified the burden of proof for abuse of the writ, holding that when a petitioner files a second or subsequent petition,
the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. . . . The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard.
McCleskey, 499 U.S. at 494, 111 S.Ct. 1454.
¶ 22. We agree with the parties that this is the proper test and adopt it *1219 today. The critical elements are as follows. First, the government has the burden of pleading abuse of the writ with the level of specificity described in McCleskey. Second, the burden then shifts to the petitioner to show cause and actual prejudice. Third, in dismissing a PCR on this basis, the superior court must make findings on the issues of cause and actual prejudice. Because the record in the instant case was not developed in light of this standard, we reverse the dismissal of petitioner's PCR and remand the matter so that the State may affirmatively plead abuse of the writ. Petitioner may then respond to the specific allegations, and the superior court can make findings as may be supported by the pleadings and evidence. See, e.g., Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998) (whether cause and prejudice exist for purposes of pre-AEDPA abuse-of-the-writ standard ordinarily involves fact issues).[6]
¶ 23. Two additional matters raised here warrant comment prior to remand, for the sake of judicial efficiency. First, to the extent that petitioner's double jeopardy claim is premised on the same ground as the double jeopardy claim presented in his prior PCR, it can be properly dismissed under § 7134. Second, if the superior court reaches the merits of petitioner's argument that the Washington County district court lacked jurisdiction to accept his guilty plea, the issue is governed by 4 V.S.A. § 436, which creates "[o]ne district court having statewide jurisdiction."
Reversed and remanded.
NOTES
[1] Petitioner, in a "Motion in Opposition to the Court's Order for Supplemental Briefing," notes that his prior petition was described by this Court as a petition for "habeas corpus relief" and not as a PCR petition. In re Laws, No.2004-118, slip op. at 1. He argues that the current petition is therefore his first PCR petition and should not be subject to the rules of successive petitions. However, the PCR statutes in Title 13 are merely a venue device and are not intended to affect the availability of habeas corpus relief. Shuttle v. Patrissi, 158 Vt. 127, 130 n. 1, 605 A.2d 845, 847 n. 1 (1992). Furthermore, as discussed infra, ¶¶ 13-22, the federal case law on which we rely makes no distinction between previous petitions brought in accordance with PCR statutes and general habeas corpus petitions when considering successive petitions. See Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (holding that "[c]ontrolling weight may be given to denial of a prior application for federal habeas corpus or § 2255 [federal PCR statute] relief" in certain circumstances to deny successive petitions)
[2] Neither petitioner nor the State adequately addressed this ground for denying relief in the first round of briefing. Accordingly, we appointed counsel for petitioner and requested supplemental briefing on the extent to which petitioner's claims were barred under § 7134 and the standard articulated by Chief Justice Holden in his concurrence in Provencher.
[3] By contrast, issues not raised at trial and preserved for appeal are allowed under this doctrine. In re Carter, 2004 VT 21, ¶ 10, 176 Vt. 322, 848 A.2d 281.
[4] In 1996, Congress significantly amended § 2255 with the Antiterrorism and Effective Death Penalty Act (AEDPA) to restrict the availability of second and successive PCR petitions under federal law. Pub.L. No. 104-132, § 105, 110 Stat. 1220. Because our § 7134 retains the language that was present in the prior version of the federal statute, to the extent we rely on federal case law, we look to those decisions interpreting the pre-AEDPA version of § 2255.
[5] The Court noted that there is a separate category of cases where a showing of cause is not required: those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey, 499 U.S. at 494, 111 S.Ct. 1454.
[6] The State contends it sufficiently pleaded abuse of the writ to put petitioner on notice and allow him the opportunity to respond. The State's argument in its motion for summary judgment is not sufficiently detailed as required by the McCleskey standard quoted above.