*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2013-022

JUNE TERM, 2013

| | | |
|---|---|---|
| In re Richard Laws | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| | } | Civil Division |
| | } | |
| | } | DOCKET NO. 566-8-12 Wncv |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Petitioner appeals the superior court's order granting the State's motion to dismiss his third post-conviction-relief (PCR) petition as successive. We affirm.

In 1993, petitioner was sentenced to twenty to twenty-five years to serve after pleading guilty to kidnapping, sexual assault, and aggravated assault. He did not appeal from that sentence or conviction. In 2000, petitioner filed his first PCR petition, arguing that his convictions violated his right against double jeopardy. The superior court granted summary judgment for the State, and a three-justice panel of this Court affirmed that decision on appeal. In re Laws, No. 2004-118, 2004 WL 5581630 (Vt. Sept. 29, 2004) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx.

In 2004, petitioner filed a second PCR petition, raising the double jeopardy claim again, as well as several other claims about his plea agreement. The superior court entered judgment for the State, ruling that it lacked jurisdiction over the petition and that, in any event, the petition was barred as successive. See 13 V.S.A. § 7134 ("The court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner."). On appeal, after concluding that the PCR statute did not deprive the court of jurisdiction to consider the petition, we established the proper standard for determining whether petitions should be barred as successive and remanded the matter for the court to apply that standard. In re Laws, 2007 VT 54, ¶¶ 7, 22-23, 182 Vt. 66. We held that a petition could be barred as successive if the claims raised therein could have been raised in an earlier petition. Id., ¶¶ 18, 22 (adopting standard from McCleskey v. Zant, 499 U.S. 467 (1991). The State has the initial burden of pleading "abuse of the writ," and can satisfy this burden by noting with clarity and particularity the petitioner's prior history of filing petitions, identifying the claims that appear for the first time in the most recent petition, and alleging that the petitioner has abused the writ by not raising those claims in prior petitions. Id. ¶ 21. The burden then shifts to the petitioner to disprove the abuse. Id. The petitioner's burden is satisfied under an excusable-neglect standard that requires him: (1) to demonstrate cause for not raising the claim earlier—by identifying some objective factor external to the defense, such as official interference or ineffective assistance of counsel, that impeded his ability to raise the claim; and (2) to show that actual prejudice resulted, as opposed to the mere possibility of prejudice. Id. ¶ 20. On remand following a hearing, the superior court

granted the State's motion to dismiss for abuse of the writ, and we affirmed that decision on appeal. In re Laws, No. 2008-245, 2008 WL 711876 (Vt. February 25, 2010) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx.

Following the dismissal of his second PCR petition, petitioner sought, but was denied, federal habeas corpus relief. He then filed a petition in Vermont superior court seeking relief under Vermont's Innocence Protection Act, 13 V.S.A. §§ 5561-5570. The State made available to petitioner's attorney the case file from the original prosecution, but also submitted a statement that evidence obtained by state police as part of the investigation of the crime was destroyed in 2001, including slides from an examination of the victim following the crime. The superior court eventually granted the State's motion for summary judgment, and petitioner did not appeal from that ruling.

In August 2012, petitioner filed his third PCR petition, raising a number of claims, including the one relevant to this appeal—that the State engaged in willful and deliberate misconduct by failing to disclose material exculpatory evidence. In particular, he asserts that a sample containing semen was taken from the victim following the crime, contrary to what was stated in a July 10, 1992, laboratory report issued by the state chemist and available to his trial attorney. The report stated, in relevant part, that "[n]o seminal fluid was detected on hospital specimen #08-4," a slide of a vaginal swab. Petitioner claims that he was not made aware of: (1) notes written by the prosecuting state's attorney from a July 9, 1992, telephone call between the state's attorney and the state chemist; and (2) a July 31, 1992, memorandum from the state chemist to the lead police investigator seeking to amend the July 10 report. The notes included the following statements, among others: "Some seminal fluid. Could come from him. Such small amount prob get nothing. . . . No vaginal swabs—2 sperm heads only." The July 31 memorandum from the state chemist stated as follows in its entirety: "Specimen #08-4 was found to contain two (2) sperm heads. Please amend the report of July 10, 1992 to read: 'No seminal fluid indicative of recent sexual ejaculation was identified on Specimen #08-4.' " Petitioner contends that the notes and memorandum demonstrate that the state's attorney intentionally did not disclose that, contrary to the July 10 report available to his attorney, there was a sperm sample available that could have exonerated him if it had been shown not to be his. He states that he was induced to enter a plea bargain because he could not prove his innocence, in part due to the absence of a sperm sample.

The superior court rejected this argument, relying primarily on an October 23, 1992, letter from the state's attorney to the trial court stating, in relevant part, the following: "According to chemist Buel, nonmobile semen heads were found in the victim. Apparently because of her serious medical condition, no vaginal swab examination was provided. Thus any match to Laws' through vaginal analysis cannot be done." While acknowledging some inconsistencies in these documents, the court ruled that the October 23 letter, which petitioner admitted had been available to his defense, would have put a person of reasonable intelligence on notice that nonmotile sperm heads had been found. The court found nothing particularly exculpatory about the statements contained in the notes and memorandum uncovered by petitioner. The court noted that petitioner's allegations were unsupported by an affidavit from his trial counsel indicating what evidence was actually made available to him, but concluded that it need not reach the issue of whether his petition could be dismissed on that basis because, even if his allegations were true, he had failed to show either excusable neglect for why this claim was not raised earlier or prejudice. Regarding his failure to show cause, the court essentially ruled that any discrepancy between the July 10 report and the notes and later memorandum should

have been obvious to a reasonable person from the October 23 letter available to his defense. Moreover, the court found that petitioner had failed to show prejudice because the gist of the July 31 memorandum was that the examination had failed to reveal evidence of recent sexual activity—and therefore the memorandum was not exculpatory in nature or even relevant.

On appeal, petitioner argues that the superior court erred by misinterpreting his argument to rely exclusively on the prosecutor's alleged suppression of the July 31 memorandum. He contends that, taken together, the documents quoted above demonstrate that the State engaged in a pattern of intentional misconduct by failing to disclose that it had collected and was in possession of a semen sample from the victim. According to petitioner, the July 9 notes and July 31 memorandum reveal that there was in fact a viable semen sample, and the October 23 letter would not have led a reasonable person to look into this earlier because the letter was aimed at convincing the court and the defense that no such semen sample was available. In petitioner's view, the trial court dismissed his petition despite being confronted with "indisputable evidence" that the state crime laboratory endorsed a false report and that the state's attorney lied to the trial court and the defense about the evidence possessed by the State.

Our review of the record supports the superior court's decision. The July 10 report indicates that no "seminal fluid" was found on the vaginal specimen taken from the victim. The notes from a conversation the day before between the state chemist and the state's attorney indicated that there was "some seminal fluid" that "could be" from petitioner but also indicates that there was "such a small amount" that they would probably "get nothing." The notes also state that there was "no vaginal swabs" but only two "sperm heads." The later memorandum from the state's chemist asks the lead investigator to amend the July 10 report to state that "[n]o seminal fluid" indicative of recent sexual activity was identified. The October 23 letter to the trial court, which the defense knew about, stated that "nonmobile semen heads were found" but the victim's serious medical condition prevented a vaginal swab examination capable of making a match to petitioner. The consistent thread through all of these documents is that there was not enough material to make a match to petitioner. We agree with the superior court that, to the extent there are minor discrepancies in the documents, those discrepancies exist in the report and the letter to the trial court, which were indisputably available to the defense at trial. Thus, the court did not err in ruling that petitioner failed to show cause why he could not have raised his claim in an earlier petition. The record further supports the superior court's conclusion that the evidence he relies upon fails to demonstrate actual rather than possible prejudice, insofar as it was neither exculpatory nor relevant. Accordingly, the superior court did not err in dismissing the petition as successive.

Seizing upon the superior court's comment that any failure to follow up on perceived discrepancies in the documents cited above could arguably show a deficiency on the part of his trial counsel, petitioner briefly argues for the first time on appeal that if this Court rejects his arguments then reversal is mandated on the grounds he was denied effective assistance of counsel. This claim is waived because it was not raised below, Bain v. Hoffman, 2010 VT 18, ¶ 8, 187 Vt. 605 (mem.), and, in any event, petitioner has failed to show prejudice.

Finally, petitioner argues that the superior court erred in denying his request for discovery to further investigate his claim. Before the superior court, petitioner requested discovery of all communications "pertaining to or related in any manner to the investigation and/or prosecution" of the criminal cases resulting in his conviction. The court denied the motion, finding no basis to allow petitioner to proceed with discovery. On appeal, petitioner makes a more limited request

to discover any documents in the prosecutor's files which relate in any way to genetic materials and discussions between the state chemist and the prosecutor. Petitioner cannot assert that the superior court erred in denying a discovery request significantly broader than the one he makes here for the first time. We find nothing in the record suggesting that the superior court abused its discretion in denying petitioner's discovery request. See V.R.C.P. 81(a) (stating, with respect to PCR proceedings brought under 13 V.S.A. §§ 7131-7137, that "discovery shall be used only by order of the court on motion for good cause shown"); see also Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999) (noting well-settled law that "a habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant," and that "discovery is available only in the discretion of the court and for good cause shown").

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice