EATON, J.
¶ 1. The central question in this appeal is whether the collateral bar rule precludes a challenge to a facially invalid, emergency, ex parte, relief-from-abuse (RFA) order in the context of a prosecution for violation of that order. Arguing that the State has not established an abuse of the writ, petitioner appeals the dismissal of his second petition for post-conviction relief (PCR). Because we conclude the collateral bar rule applies, we affirm.
¶ 2. The relevant history is undisputed. In April 2011, having been charged with three felonies and six misdemeanors, petitioner pled guilty to one felony-violation of an abuse-prevention order (VAPO)-and five misdemeanors as part of a plea agreement. The felony VAPO charge was based on a telephone call petitioner made to his ex-girlfriend in violation of an emergency, ex parte RFA order that, among other things, prohibited petitioner from contacting her. The court imposed a sentence of five-to-fourteen years to serve, which constituted an enhancement under the Habitual Offender Act, 13 V.S.A. § 11. On direct appeal of the sentence, this Court rejected petitioner's plain-error argument that the Habitual Offender Act did not authorize enhancing a minimum sentence beyond the underlying offense's statutory minimum. State v. Carpenter, 2013 VT 28, ¶¶ 4-6, 193 Vt. 484, 70 A.3d 1023.
*867 ¶ 3. Meanwhile, while his appeal was pending, petitioner filed his first PCR petition, which the PCR court stayed pending resolution of the appeal. After this Court upheld his sentence on appeal, petitioner filed another PCR that was consolidated with the first. Petitioner sought the same relief on the same grounds in both petitions. Petitioner represented himself at the merits hearing because the Defender General had determined that his claims lacked merit, and the PCR court allowed assigned counsel to withdraw. 13 V.S.A. § 5233(a)(3). In November 2014, the (first) PCR court rejected petitioner's various arguments and denied his petition.[1] Petitioner did not appeal.
¶ 4. Petitioner filed this second PCR petition in June 2015. Once again, the PCR court assigned counsel but then granted counsel's motion to withdraw. The PCR court determined that the bases for petitioner's second PCR petition were the same as those previously rejected on the merits and dismissed the petition as successive. On appeal, this Court reversed the dismissal and remanded the case for further proceedings. In re Carpenter, No. 2015-325, 2016 WL 7363915, at *1 (Vt. Dec. 16, 2016) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo15-325.pdf [https://perma.cc/325M-5S8Q]. We explained that the second PCR raised a new argument: that the no-contact provision in the ex parte, temporary RFA, which underlay petitioner's felony VAPO conviction, was invalid, rendering his indictment for violating that order defective. Id. at *2-3. In contrast to the statute authorizing final RFA orders, the statute authorizing ex parte, emergency RFA orders in effect at the time did not allow orders prohibiting contact with the RFA plaintiff.[2] Id. Petitioner argued that his trial counsel had been ineffective in failing to raise this issue. Id. Because petitioner had raised an issue not previously raised and resolved, we concluded that his second PCR petition was not successive. But, we noted that the State had not alleged, and the PCR court had not found, an abuse of the writ, and said that the court could consider on remand any abuse-of-the-writ claim made by the State. Id. at *3-4. We also directed the PCR court to assign counsel for petitioner on remand. Id.
¶ 5. On remand, the State moved to dismiss the petition for abuse of the writ. Because the Prisoner's Rights Office continued to have a conflict, the court ordered that substitute counsel be appointed and enter an appearance. After no lawyer entered an appearance by the assigned date, the court ordered Attorney Furlan-the attorney who had screened petitioner's first PCR petition and found no merit-to enter an appearance. On petitioner's behalf, Attorney Furlan argued in response to the State's motion to dismiss that his own prior neglect in failing to identify the issue raised by petitioner in this PCR petition constituted sufficient cause for petitioner's failure to raise the claim in his first PCR petition, and that petitioner was prejudiced by his counsel's ineffective assistance in failing to argue that the RFA no-contact provision was invalid. See In re Laws, 2007 VT 54, ¶ 20, 182 Vt. 66, 928 A.2d 1210 (explaining PCR abuse of writ cause-and-prejudice test).
¶ 6. The PCR court granted the State's motion to dismiss for abuse of the writ.
*868 The court assumed, without deciding, that petitioner had demonstrated sufficient cause for failing to raise the issue sooner but concluded that he had not met his burden to show proof of actual prejudice. The court reasoned that any argument in the VAPO prosecution that the no-contact provision in the underlying RFA was invalid would not have succeeded. The court explained that under the collateral bar rule petitioner could not collaterally challenge the validity of the underlying RFA order in his prosecution for felony violation of that order. The court concluded that no exception to this bar applied because petitioner had ample opportunity to challenge the order before violating it.
¶ 7. On appeal, petitioner argues that the PCR court erred by: (1) assigning him a lawyer who, on two previous occasions, determined after screening that his PCR claims lacked merit; and (2) concluding that his challenge to the validity of the provision of the underlying RFA that led to his conviction was precluded by the collateral bar rule.
I. Assignment of Counsel
¶ 8. We agree with petitioner that the PCR court's assignment of a lawyer who had previously concluded that his claims had no merit was not the best practice, both because the assignment understandably undermined petitioner's confidence that assigned counsel would zealously pursue his claims and because counsel was required to emphasize the neglect of prior counsel-in this case, himself-to overcome the State's motion to dismiss for abuse of the writ.
¶ 9. Nonetheless, we conclude that even if the assignment was error, in this case petitioner did not suffer prejudice. Laws, 2007 VT 54, ¶ 22, 182 Vt. 66, 928 A.2d 1210 (explaining that when State meets burden of showing abuse of writ, "the burden then shifts to the petitioner to show cause and actual prejudice"). In the proceeding on remand, counsel advanced petitioner's claim concerning the ineffectiveness of trial counsel in failing to challenge the validity of the indictment and appropriately argued that petitioner should be allowed to pursue the claim because counsel's own neglect in reviewing petitioner's claims on two prior occasions was sufficient cause to satisfy the first prong of the abuse-of-the-writ analysis. The PCR court assumed without deciding that this was the case. Accordingly, on this record, we conclude that the PCR court's appointment of counsel that had previously found petitioner's claims meritless is not grounds to reverse.
II. Merits of Dismissal
¶ 10. The PCR court further concluded that petitioner was not free to collaterally challenge the RFA order because he had an adequate opportunity to challenge it. As a consequence, petitioner had suffered no prejudice from counsel's ineffectiveness. We agree.
¶ 11. When an individual makes a claim for the first time in a second or subsequent PCR petition, under certain circumstances, the court may dismiss the claim for "abuse of the writ." In re Towne, 2018 VT 5, ¶ 25, --- Vt. ----, 182 A.3d 1149. The State "bears the burden of pleading abuse of the writ, setting forth a petitioner's writ history, identifying the claims that appear for the first time, and alleging the petitioner has abused the writ." Id. The burden then shifts to the petitioner "to show cause for failing to raise the claim previously and actual prejudice from the default." Id. The cause standard requires petitioner to show "some objective factor external to the defense that impeded counsel's efforts to raise the claim in the earlier proceeding." Id. (quotation omitted). Recognized examples *869 of "cause" include official interference, situations where a factual or legal basis for a claim was unavailable in an earlier proceeding, or ineffective assistance of counsel. Id. To show prejudice, a petitioner must demonstrate that the alleged errors during the underlying trial "worked to the petitioner's actual and substantial disadvantage." Id. (quotation omitted).
¶ 12. Whether the PCR court properly dismissed the petition as an abuse of the writ turns on whether the court properly applied the collateral bar rule in this case. The court assumed for the purposes of its analysis that petitioner had shown good cause for failing to raise his claim earlier; its dismissal stemmed from its determination that petitioner had failed to show prejudice from trial counsel's failure to assert the invalidity of the underlying RFA. In reviewing this conclusion on appeal, we do not dispute petitioner's contention that the no-contact provision in the emergency RFA, which was the basis for his criminal conviction, was invalid on its face. The RFA court at the time had no authority to impose a no-contact restriction in the context of an ex parte, emergency RFA order. The statute expressly limited the court's available remedies in an ex parte order to those listed in the statute, and the Legislature did not authorize a no-contact condition in that statute until 2017. See 15 V.S.A. § 1104(a)(1)(D) (authorizing use of no-contact condition); 2017, No. 44, § 9 (modifying 15 V.S.A. § 1104 to add subparagraph (a)(1)(D) ).[3] The question for us on appeal is whether, in the context of his prosecution for violating the no-contact provision in the RFA order, petitioner was entitled to invoke the invalidity of that provision as a defense.
¶ 13. Under the collateral bar rule, a person is generally barred from collaterally challenging the validity of a court order in defense to a contempt proceeding for violating the order. See In re Duckman, 2006 VT 23, ¶ 10, 179 Vt. 467, 898 A.2d 734 (concluding that collateral bar rule prevented attorney from challenging validity of court's order as defense to judgment of contempt for violating that order); Walker v. City of Birmingham, 388 U.S. 307, 320-21, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) ("[I]n the fair administration of justice no [person] can be judge in [their] own case."). This Court has applied the doctrine to preclude collateral challenges to underlying court orders in distinct criminal prosecutions predicated on violations of the underlying orders. For example, in State v. Mott, we held that, with several exceptions, a defendant could not challenge an abuse-protection order in the context of a criminal prosecution for violation of that order. 166 Vt. 188, 191-92, 692 A.2d 360, 363 (1997) ("We do not generally allow a person who is under a court order to challenge it by violating it."); see also State v. Carlson, 133 Vt. 562, 563-64, 349 A.2d 237, 238 (1975) (barring defendant from challenging lawfulness of his detention in context of criminal prosecution for escape).
¶ 14. An exception to this rule potentially applies in this case. This Court has recognized that where a party's ability to effectively challenge an order is constrained, the party may be able to challenge it in a collateral proceeding arising from a violation of the order. In Mott, the defendant, who was charged with violating a final RFA order, argued that the RFA order had been issued without an opportunity for him to be heard, in violation of his due process rights.
*870 166 Vt. at 192, 692 A.2d at 363. This Court agreed that the defendant could collaterally challenge the final RFA order if it had been issued in violation of his due process rights to notice and an opportunity to be heard. Id. In reaching this conclusion, this Court relied in part on a prior opinion in State v. Putnam, in which it considered a limited collateral challenge to a license suspension order in the context of a prosecution for driving with a suspended license. 137 Vt. 410, 413, 407 A.2d 161, 163 (1979) (recognizing "the cogency of the State's argument that litigation must cease sometime, and that there is a strong public policy favoring resistance of the license suspension when it is imposed, not later" while also emphasizing that there is "force to the defendant's argument that he should not be bound, in any proceeding, by a suspension levied without constitutionally adequate notice, or without subject matter jurisdiction" (citation omitted) ). The Mott Court concluded that because the defendant had received advance notice of the final RFA hearing and could have requested access to the hearing while he was incarcerated, he had received adequate notice and an opportunity to be heard. 166 Vt. at 192, 692 A.2d at 363-64.
¶ 15. The reasoning of Mott reflects the widely stated principle that the collateral bar rule does not apply where "there was not an adequate and effective remedy to review the challenged ruling." See Duckman, 2006 VT 23, ¶ 11, 179 Vt. 467, 898 A.2d 734 (noting general exception to collateral bar rule for orders not subject to adequate and effective review). The U.S. Supreme Court implicitly recognized this exception in Walker, 388 U.S. at 318-19, 87 S.Ct. 1824. In Walker, the petitioners knowingly violated an Alabama court's ex parte, temporary injunction enjoining them from participating in street parades and processions. In the proceeding to determine whether they should be sanctioned for contempt, the trial court declined to entertain their constitutional challenges to the injunction and the ordinance on which it was based. The Supreme Court affirmed, reasoning:
This case would arise in quite a different constitutional posture if the petitioners, before disobeying the injunction, had challenged it in the Alabama courts, and had been met with delay or frustration of their constitutional claims. But there is no showing that such would have been the fate of a timely motion to modify or dissolve the injunction. There was an interim of two days between the issuance of the injunction and the Good Friday march.
Id.[4]
¶ 16. Here the petitioner had avenues available to him to challenge the validity of the order short of violating it.
*871 ¶ 17. With respect to petitioner's opportunity for review of the no-contact provision, he has alleged the following.[5] On January 4, 2011, the family division of the superior court issued an ex parte, temporary RFA order that required, among other things, that petitioner have no telephone, text, or email contact with his ex-girlfriend except that he could contact her about the parties' children. The order included a notice of hearing for January 13, 2011. Petitioner was served with this RFA order on January 9, and he called his ex-girlfriend by telephone on January 11. She answered, and he said, "Hey, what's up?" at which point she hung up the phone. He was charged with violating the no-contact provision on the basis of that call.
¶ 18. On this record, we conclude that petitioner had an adequate and effective remedy available to challenge the no-contact provision in the RFA order. Like the Walker case, this was not a case in which petitioner challenged the order and was met with delay or frustration of his claims. 388 U.S. at 318-19, 87 S.Ct. 1824. The order was set to expire on its own terms four days after he was served, and the court had already scheduled a hearing on the RFA petition for that date. All emergency orders issued pursuant to 15 V.S.A. § 1104, as this one was, are required to state a date, time, and place "when the defendant may appear to petition the court for modification or discharge of the order." 15 V.S.A. § 1104(b) (emphasis added).[6] Moreover, petitioner made no effort to challenge the no-contact provision in the temporary order in the meantime by filing an emergency motion asserting that the trial court had exceeded its statutory authority in issuing a no-contact order. Instead, he violated the order within forty-eight hours of its service. We have recognized that people " 'who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.' " Duckman, 2006 VT 23, ¶ 10, 179 Vt. 467, 898 A.2d 734 (quoting Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) ). When the order in question is an RFA order, they likewise risk criminal prosecution for violating that order. Upon notice of the order, petitioner had the options of complying with the no-contact requirement for the few days pending the scheduled hearing and expiration of the order and challenging the offending term at that hearing if a final order was to be issued; seeking and getting emergency relief from the offending term in advance of the final hearing;[7] or violating the order and risking prosecution. He chose the final option, to his peril.
*872 ¶ 19. Because petitioner had an adequate and effective remedy to challenge the no-contact provision of the RFA order, he is barred from collaterally challenging its validity in this PCR proceeding. As a consequence, he has failed to show he suffered prejudice as a result of the ineffective assistance of his counsel.[8]
Affirmed.
¶ 20. If defendant had an adequate opportunity to challenge the validity of the ex parte, temporary relief-from-abuse (RFA) order, then it's hard to imagine when the exception to the collateral bar rule for circumstances in which there is not an adequate and effective opportunity to challenge a court order pre-enforcement would ever apply. Because I conclude that defendant did not have such an opportunity, I respectfully dissent.
¶ 21. I base my conclusion on three factors. First, in significant contrast to the defendant in the Mott case, defendant here did not have notice or opportunity to participate in the proceedings leading to the initial RFA order. See State v. Mott, 166 Vt. 188, 692 A.2d 360 (1997). In Mott, this Court indicated that a collateral challenge to an RFA order was available in the context of a prosecution for violating that RFA where a defendant had no notice or opportunity to participate in the final RFA hearing. Id. at 192, 692 A.2d at 363. The reasoning of Mott applies here. Defendant undisputedly had no notice or opportunity to participate in the proceedings leading to the temporary RFA that forms the basis for his prosecution. Given that the complainant did not appear, and the temporary RFA expired by its own terms without any hearing, defendant never had the opportunity to be heard in the family division concerning the RFA.
¶ 22. Second, even if the family division had held a final hearing on the RFA petition, petitioner's challenge to the no-contact provision in the temporary order would have been moot. The statutory limitation on the remedies available to the court in the context of an emergency, ex parte RFA order did not apply to a final RFA order. See 15 V.S.A. § 1103(c)(2). As a consequence, petitioner likely would not have been able to challenge the no-contact provision at the scheduled hearing several days after he was served, or ever, for that matter.
¶ 23. Third, as a practical matter, the notion that he could have filed a motion for emergency relief and secured a response from the court during the term of the emergency, ex parte order is exceedingly unrealistic. In that regard, the facts of this case are very different from the Walker case, in which the U.S. Supreme Court explained:
There was an interim of two days between the issuance of the injunction and the Good Friday march. The petitioners give absolutely no explanation of why they did not make some application to the state court during that period. The injunction had issued ex parte; if the court had been presented with the petitioners'
*873 contentions, it might well have dissolved or at least modified its order in some respects. If it had not done so, Alabama procedure would have provided for an expedited process of appellate review. It cannot be presumed that the Alabama courts would have ignored the petitioners' constitutional claims.
Walker v. City of Birmingham, 388 U.S. 307, 318-19, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (footnote omitted). The suggestion that two days gave the organizers of a high-profile civil rights march enough time to secure expedited review of a serious constitutional challenge to an ex parte order made sense in that context. But the notion that a litigant could reasonably expect judicial review of a challenge to a temporary RFA order during the several-day window of time in which such orders are operative is entirely unrealistic.
¶ 24. For all of these reasons, as a practical matter, petitioner's first real opportunity to challenge the no-contact provision was in the context of defending his criminal prosecution. In ruling otherwise, the majority essentially holds that an individual can be convicted and incarcerated for violating a prohibition that the law does not even authorize, and that the individual has not had any realistic opportunity to challenge. The due process concerns that this Court recognized in Mott are squarely in play. If the "adequate and effective remedy" exception to the collateral bar rule truly exists, it applies in this case.[9]
¶ 25. I am authorized to state that Justice Skoglund joins this dissent.

Because petitioner's first two PCR petitions raised essentially the same claims and were consolidated, we treat them collectively as his first PCR petition.

The Legislature amended 15 V.S.A. § 1104 to allow for no-contact provisions in emergency orders in May 2017. See 2017, No. 44, § 9.

We do not fault the trial court for exceeding its authority in this way. The court issued the order on a standard Judiciary form that mistakenly included the option of a no-contact provision.

A second potentially relevant exception to the collateral bar rule applies to orders that are "transparently invalid." State v. Winter, 117 Conn.App. 493, 979 A.2d 608, 616 (2009). This Court has not expressly adopted the exception. See Duckman, 2006 VT 23, ¶ 11 n.4, 179 Vt. 467, 898 A.2d 734 (noting that "in some jurisdictions, orders that are transparently invalid or frivolous are excepted from the collateral bar rule"). Petitioner has not argued this exception should apply in this instance and we decline to reach it. We have also recognized a number of other exceptions that do not appear to be relevant here. First, in some contexts, a person can collaterally challenge the subject matter and personal jurisdiction of the tribunal issuing the underlying order giving rise to a collateral enforcement action. See, e.g., Putnam, 137 Vt. at 413, 407 A.2d at 163 ("[I]n a prosecution for driving with license suspended, collateral attack upon the suspension is permissible for, and limited to, questions of jurisdiction over the defendant and the subject matter in the original suspension proceedings."). Second, where compliance could cause irreparable injury, such as self-incrimination, that may not be "repaired by appellate vindication," courts have declined to apply the collateral bar rule. Duckman, 2006 VT 23, ¶¶ 11-12, 179 Vt. 467, 898 A.2d 734.

As this case appears before us on appeal from the State's successful motion to dismiss, we accept petitioner's factual allegations as true. Prive v. Vt. Asbestos Grp., 2010 VT 2, ¶ 2, 187 Vt. 280, 992 A.2d 1035. Petitioner attached the underlying RFA order and the affidavit of probable cause in the VAPO case to his initial PCR petition. These documents both support the timeline described above with respect to his date of service and the date he was charged, and the affidavit of probable cause outlines the circumstances of the phone call that gave rise to the VAPO charge.

In fact, the record establishes that neither party appeared at the scheduled merits hearing, and consequently no final order was entered. The emergency, ex parte RFA order, which contained the no-contact provision at issue, expired on the day of the scheduled hearing and was no longer binding on the petitioner.

See V.R.C.P. 65(a) providing for modification of restraining orders issued without notice, applicable in abuse-prevention proceedings through V.R.F.P. 9(a).

Petitioner also suggests in his brief an alternate basis for an ineffective assistance of counsel claim: the RFA order allowed him to have contact with his ex-girlfriend for the purpose of discussing their children and, because his girlfriend hung up the phone right after he greeted her, it is entirely plausible that he called to talk about his children. This argument was not developed or addressed by the PCR court, and we do not address it in this appeal. See In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (explaining that "to properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it" (quotation omitted) ). Further, given our resolution of the prejudice issue, this argument, if successful, would not result in a different outcome.

This may not be the only applicable exception to the collateral bar rule. Because petitioner has not argued that an exception for "transparently invalid" orders applies in this case, I do not address the question. In re Duckman, 2006 VT 23, ¶ 10, 179 Vt. 467, 898 A.2d 734.